477 A.2d 890

**COMMONWEALTH of Pennsylvania**

v.

**Edward J. WOODBURY, Appellant.**

Superior Court of Pennsylvania.

June 8, 1984.

Submitted Feb. 3, 1984.

36

Melvin B. Goldstein, Philadelphia, for appellant.

Robert B. Lawler, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before CIRILLO, BECK and JOHNSON, JJ.

JOHNSON, Judge:

Defendant-appellant Edward Woodbury initially appeared before the trial court on March 25, 1982 charged with possession of an instrument of crime, involuntary and voluntary manslaughter, and murder. Following a waiver of trial by jury appellant was found guilty of possession of an instrument of crime [1] and murder in the third degree.[2] Post-verdict motions were denied after the hearing of argu-

1. 18 Pa.C.S. § 907.

2. *Id.* § 2502.

ment, and the appellant was then sentenced. Subsequently, an appeal was timely filed to this court.

■■■ The sole issue raised on appeal is the sufficiency of the evidence to sustain the verdicts in this case. Appellant argues mainly that the voice identification testimony elicited by a witness in the case was insufficient. In considering appellant's contention as to sufficiency as a whole, this court must view the evidence in the light most favorable to the Commonwealth, as verdict winner. *Commonwealth v. Martin,* 481 Pa. 515, 393 A.2d 23 (1978). We must also accept as true all evidence and reasonable inferences upon which, if believed, the factfinder could have properly based its verdict, and determine whether such evidence and inferences are sufficient in law to prove guilt beyond a reasonable doubt. *Commonwealth v. Stockard,* 489 Pa. 209, 413 A.2d 1088 (1980); *Commonwealth v. Biggs,* 320 Pa.Super. 265, 467 A.2d 31 (1983).

The record indicates the facts as follows:

■ On May 20, 1981, Philadelphia Police Officer Lois Jones, who was assigned to a radio patrol car, was approached by a female at 22nd and Lehigh Avenue in Philadelphia. The female directed her to the 2400 block of Lehigh Avenue where another individual asked the officer to go to a row house at 2416 West Lehigh Avenue. Upon her arrival at that address, Officer Jones proceeded to the second floor where she observed a black male, later identified as Alexander Jackson, lying in the hallway on his right side with blood coming from his nose and mouth. Based upon her observations Officer Jones concluded that Jackson was alive and she called for a Rescue Squad car. Alexander Jackson was pronounced dead at the Medical College of Pennsylvania on May 22, 1981. An autopsy performed the same day by Dr. Catherman, Deputy Medical Examiner for Philadelphia, revealed that the cause of death was a gunshot wound which had entered the cranial cavity. A bullet recovered from Jackson's brain was turned over to the police and determined to be a .22 caliber bullet. It was

stipulated at trial that Alexander Jackson's body was identified by family members who would testify that he was alive and well prior to May 20, 1981.

The Commonwealth's chief witness, Charlene Booker, testified that she had known both the decedent and the appellant for several years prior to May 20, 1981. On that date she was present on the second floor of 2416 West Lehigh Avenue along with Helen Hill, a person named Dave, and Alexander Jackson, who lived on the third floor of the building. At approximately 1:30 a.m. she heard a knock at the door and a male voice she recognized as that of Edward Woodbury identifying himself as "Woodie". Ms. Booker then observed Alexander Jackson leave the apartment and go into the hallway to meet the appellant, who was standing alone. Immediately after Jackson exited the apartment, she heard an argument ensue between Jackson and Woodbury. Woodbury was demanding money owed to him by Jackson. Ms. Booker testified that she heard the appellant state that he would beat Jackson with a gun. Within seconds after the beginning of the argument Ms. Booker heard a gunshot. She opened the apartment door and found Jackson lying on the floor bleeding from the face. Ms. Booker testified that during the time she heard the argument and the shot, she was in the apartment bathroom which was approximately six feet from the door leading to the hallway.

A warrant for the arrest of Edward Woodbury was obtained on May 22, 1981 but appellant was not arrested until October 4, 1981. Appellant gave a false name and identification papers to the detectives who arrested him in the residence of Mr. Skipworth. Prior attempts to arrest the appellant at the address where he had resided prior to the incident had been unsuccessful.

In a statement given by the appellant to Detective Twyman of the Homicide Division and in his testimony at trial, the appellant admitted that he had gone to the decedent's apartment building to ask him for money owed but denied shooting Jackson. According to the appellant Jackson was

shot by another man, named "Dutch", who was also standing in the hallway. Woodbury asserted "Dutch" shot Jackson after insulting him. The appellant further testified that during the five (5) months between Jackson's shooting and his arrest he knew that he was being sought by the police, but was avoiding apprehension until he had sufficient funds to retain an attorney.

Utilizing the appropriate standard, in a light most favorable to the Commonwealth as verdict winner, the evidence is clearly sufficient to sustain the convictions as to the charges of possession of an instrument of crime and murder in the third degree. The appellant denies the allegations and renders a completely different version as to the course of events. However, passing upon the credibility of witnesses and the appropriate weight to be accorded the evidence produced at trial is within the sole province of the trier of fact. *Commonwealth v. Sample*, 321 Pa.Super. 457, 468 A.2d 799 (1983); *Commonwealth v. Fortune*, 305 Pa.Super. 441, 451 A.2d 729 (1982). Additionally, the weight to be given voice identification testimony is also within the province of the trier of fact. *Sterling v. Huey*, 155 Pa.Super. 398, 400, 38 A.2d 515, 516 (1944). It is clear that the factfinder chose to believe the version presented by the Commonwealth. The evidence, thus taken as a whole, is sufficient to sustain the convictions as to the charges of possession of an instrument of crime and third degree murder.

Essentially appellant contends that the voices heard by Charlene Booker, while she was in the bathroom, were that of decedent and another person named "Dutch", and that appellant was not involved in the realm of the ensuing argument. Therefore he asserts that he could not be the murderer, and that it was not his voice that Booker heard.

Appellant argues that the voice identification is insufficient because there was no evidence as to peculiarity of the voice, relying mainly on *Commonwealth v. Derembeis*, 120 Pa.Super. 158, 182 A. 85 (1935). Judge Cunningham, speaking for this court in *Derembeis*, said:

40

> "The established rule is that while the sound of the voice is a relevant circumstance to be considered on the question of identity, the value of such testimony depends first upon some peculiarity of the voice and second, the extent of the familiarity of the voice. Wharton's Criminal Evidence, Vol. 2, p. 1803; *Brown v. Commonwealth*, 76 Pa. 319 (1874)."

*Derembeis*, 120 Pa.Super. at 166, 182 A. at 88. *Derembeis*, even though a case involving identification by the sound of a voice, is not controlling. The evidence presented in *Derembeis* as to the voice identification was dubious and was also contradicted by an extremely well-supported alibi. Those circumstances warranted the granting of a new trial.

Additionally, *Derembeis* has been distinguished by subsequent decisions. In *Sterling v. Huey, supra,* this court cited the rule from *Derembeis* and then said:

> "Of course if there is something abnormal, exclusive or individual in a voice, testimony identifying it would probably carry more weight than if the voice was without any peculiarity. But if one is familiar with and is able to identify, a voice by its sound or tone quality, that testimony is admissible and the weight to be given it is a question for the [factfinder]."

The weight to be given voice recognition testimony is a question for the factfinder, but in *Derembeis* the testimony as to voice identification was branded insufficient as a matter of law to support the conviction.

 There is testimony on the part of Charlene Booker of a long existing acquaintanceship with appellant and a familiarity with his voice, which she positively recognized as the one which uttered the threats immediately before the decedent was attacked and shot. A witness may testify to a person's identity from his voice alone. *Commonwealth v. Reid,* 448 Pa. 288, 292 A.2d 297 (1972); *Commonwealth v. Johnson,* 201 Pa.Super. 448, 193 A.2d 833 (1963); *Sterling v. Huey, supra.* "Further, evidence of identification need not be positive and certain in order to convict, although

indefiniteness and uncertainty go to its weight." *Commonwealth v. Hickman*, 453 Pa. 427, 309 A.2d 564 (1973).

Charlene Booker was a competent witness and her testimony was sufficient if accepted by the factfinder, as it was, to identify the appellant as the one who murdered the decedent. The appellant was afforded every opportunity to present any defense that he might have, was given a full and fair opportunity to be heard, and was represented by able counsel. By reason of the foregoing, this court finds no merit in appellant's contention that the voice identification was not sufficient to sustain the third-degree murder conviction.

Appellant further asserts that the evidence was insufficient to support the guilty verdict as to possession of an instrument of crime.

The only evidence in support of the accusation of possession was purely circumstantial. However, once the factfinder concluded that the appellant was the slayer and that the death resulted from the infliction of a gunshot wound, the factfinder could logically have concluded from all of the evidence that appellant had possession of a gun, that the gun was an instrument commonly used for criminal purposes, and that his possession of the gun was, under the circumstances, not manifestly appropriate for any lawful use that the gun may have had.[3] *See Commonwealth v.*

3. The following section defines possessing an instrument of crime in relevant part:

§ 907. Possessing instruments of crime

. . . . .

(b) Possession of weapon.—A person commits a misdemeanor of the first degree if he possesses a firearm or other weapon concealed upon his person with intent to employ it criminally.

(c) Definitions.—As used in this section the following words and phrases shall have the meanings given to them in this subsection:
"Instrument of crime."

(1) Anything specially made or specially adapted for criminal use; or

(2) Anything commonly used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have.

42

*Keaton*, 276 Pa.Super. 518, 522, 419 A.2d 578, 580 (1980), where a conviction for this offense was upheld based only upon circumstantial evidence and with an absence of any direct evidence of actual physical possession of the weapon. Therefore, appellant's conviction for this offense was grounded upon competent evidence. The evidence brought out during the course of the trial is sufficient to sustain both the conviction for murder in the third degree and the conviction for possession of an instrument of crime.

Judgments of sentence are affirmed.

"**Weapon.**" Anything readily capable of lethal use and possessed under circumstances not manifestly appropriate for lawful uses which it may have....