502 A.2d 173

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Jerome SILO, Appellant.**

Supreme Court of Pennsylvania.

Submitted Oct. 22, 1985.

Decided Dec. 12, 1985.

Suzanne McGettigan, Philadelphia, for appellant.

Robert B. Lawler, Chief/Appeals Div., Steven H. Goldblatt, Asst. Dist. Attys., Alan Sacks, Philadelphia, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

Before us is Jerome Silo's (Appellant) direct appeal to this Court from a judgment of sentence of life imprisonment

entered upon a jury verdict finding Appellant guilty of murder of the first degree for the stabbing death of his mother.[1]

Appellant now appeals from his second trial, which was brought about because of our reversal of the first judgment of sentence and our order for a new trial in *Commonwealth v. Silo*, 480 Pa. 15, 389 A.2d 62 (1978). A new trial was commenced before a jury presided over by the Honorable Albert F. Sabo, Judge of the Court of Common Pleas of Philadelphia County, on December 5, 1979. The jury returned its verdict of guilty on December 12, 1979, and Motions for New Trial and in Arrest of Judgment were denied on July 28, 1980, whereupon Appellant was sentenced to life imprisonment and this appeal followed.

At trial, the evidence established the following sequence of events:

On the morning of October 10, 1969, the police responded to a call from Mrs. Rosso and Mrs. Collins, neighbors of Mrs. Silvia Silo, Appellant's mother. Officer McNally arrived at 9:25 a.m., and was told by the neighbors that on the ninth, at about 10:00 a.m., they had heard an argument and screams coming from the Silo residence. They stated that Appellant and his mother had lived there together for many years. They saw the Appellant come outside at about 2:40 p.m., on the ninth, and sit on the porch steps. Soon, he was taken by a rescue squad vehicle to the nearby John F. Kennedy Hospital for treatment of chest pains.

The neighbors were concerned because they had not seen Mrs. Silo leave for work at her usual time, around 3:00 p.m., on the ninth, and that an upstairs window had been open all night, although it was Mrs. Silo's habit to close it. They had telephoned the hospital and Mrs. Silo's place of employment and learned that she had not been at either place.

1. Appellant was sentenced on July 28, 1980. At that time, this Court was vested with exclusive jurisdiction of appeals from final orders of the Courts of Common Pleas in felonious homicide cases. 42 Pa.C.S. § 722(1).

They did not see her return from work at her usual time—11:00 p.m.

When Mrs. Silo did not report for work on the ninth, her employer became concerned and began calling her residence every hour until midnight. When the employer could not locate Mrs. Silo by the morning of the tenth, she also contacted the police and suggested they they investigate the Silo residence.

Armed with these facts, Officer McNally concluded that exigent circumstances existed which required that he get into the house as quickly as possible to aid Mrs. Silo if she were there and unable to help herself. He arranged by phone with hospital personnel to get Appellant's key, went to the hospital, picked up the key, called for back-up assistance, and returned to the house by 10:00 a.m. and, with other police officers and detectives who had since arrived, entered the Silo home. Once in the house, they discovered the body of Mrs. Silo lying on the kitchen floor amidst a pool of blood. She had been stabbed repeatedly.

While Appellant does not challenge the sufficiency of the evidence used to find him guilty of murder of the first degree, he does complain that his trial counsel was ineffective for failing to 1) move to suppress the body and other evidence obtained at the scene of the crime; 2) file supplemental post-trial motions; and 3) object to a trial court instruction on consciousness of guilt. We have carefully reviewed each of these challenges and, finding no merit in any of Appellant's arguments, affirm the sentence of life imprisonment.

Appellant first argues that his trial counsel was ineffective in failing to move to suppress the victim's body and other evidence obtained at the scene of the crime because this evidence was secured by the warrantless search of the Silo home. This argument has no merit.

The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone, and which forms the basis for the assertion of ineffec-

tiveness, is of arguable merit, for counsel cannot be considered to be ineffective for failure to assert a meritless claim. *Commonwealth v. Pursell,* 508 Pa. 212, 495 A.2d 183 (1985); *Commonwealth v. Stoyko,* 504 Pa. 455, 475 A.2d 714 (1984).

It is true that in Appellant's first trial this Court reversed the first judgment of sentence because we found that the verdict was based on evidence which should have been suppressed. Specifically, the Court ruled that the warrantless search and seizure by the police of Appellant's blood-stained clothing from his hospital room without his knowledge or consent violated his rights under the Fourth Amendment to the Federal Constitution. *Silo,* 480 Pa. at 20, 389 A.2d at 67.

It does not necessarily follow, however, that the search of the house, which resulted in the discovery of the victim's body, was an improper search because the police used Appellant's key to gain access to the house. Even if the procuring of Appellant's housekey was improper, the Fourth Amendment does not bar police officers from making warrantless entries and searches of houses when they reasonably believe that a person within is in need of immediate aid. *Commonwealth v. Maxwell,* 505 Pa. 152, 477 A.2d 1309 (1984); *Commonwealth v. Norris,* 498 Pa. 308, 446 A.2d 246 (1982); *Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978).

In this case it is clear that the police had reason to believe that Mrs. Silo was in her home and in need of help. The victim had last been observed by her neighbors at her home where she was heard arguing with Appellant. In the ensuing twenty-four hours she was not seen by anyone, could not be reached by telephone, and did not report for work. She was not observed leaving her home for work, and she did not visit her son in the hospital. These circumstances were sufficient for the police to conclude that Mrs. Silo was in need of immediate aid, and justified their war-

rantless entry into the home.[2]  Since exigent circumstances existed for this warrantless search, there is no merit to Appellant's argument that trial counsel should have sought to suppress the body, the weapon, and other evidence found in plain view in the kitchen of the Silo home.

■■■  Appellant next argues that his trial counsel was ineffective for failing to file supplemental post-verdict motions.  Appellant does not identify which issues were neglected by his trial counsel, but only makes a bald allegation that after his trial counsel received the transcript of the trial, he should have thought of other exceptions.  Without more specificity, we will not conclude that trial counsel was ineffective for failing to raise supplemental post-trial motions.  Assertions of ineffectiveness in a vacuum cannot be ineffectiveness, and claims of ineffectiveness raised in the abstract will not be considered.  *Commonwealth v. Pettus*, 492 Pa. 558, 424 A.2d 1332 (1981); *Commonwealth v. Floyd*, 506 Pa. 85, 484 A.2d 365 (1984).

Since Appellant's claim of ineffectiveness is nothing more than a boilerplate allegation, we find it to be without merit.

■■■  Finally, Appellant argues that his trial counsel was ineffective in failing to object to the trial court's jury instruction which dealt with consciousness of guilt.[3]  This argument is also meritless.

**2.**  It might be argued that the circumstance did not appear to be so exigent to the police since they took time to go for a key rather than breaking in the door.  Under all the facts of this case, the choice was a judgment call by the police, and we will not substitute our judgment for theirs.  It only took a few minutes to go to the nearby hospital and return with the key.  Obtaining a warrant would unquestionably have taken a much longer time.

**3.**  The trial court charged the jury in pertinent part as follows:
Under certain circumstances, the conduct of an accused after a crime may be considered against him as evidence of consciousness of guilt. For example, the guilt of the accused may be inferred from the fact that he made contradictory or false statements regarding the whereabouts of the victim of the crime.
Consciousness of guilt may also be inferred from an intent or attempt by the accused to conceal or remove evidence of the crime.  If you find as fact that the defendant did make false or contradictory statements regarding the whereabouts of his mother or if you find

412

Trial counsel did raise this very issue in his post-trial motions. At that time, trial counsel argued that the charge was defective in that its effect was to shift the burden of proof on the issue of purpose or knowledge to the defense. The trial court dismissed this exception in its opinion, explaining that by using the word "infer" the jury was made to understand that it was not bound to find consciousness of guilt from the fact that the defendant may have made contradictory or false statements, or may have attempted to conceal or remove evidence of the crime. The Court concluded:

> However, you are not bound to draw that inference. It is for you and you alone as fact finders to accept or reject this inference of consciousness of guilt and to give whatever weight, if any, you wish to this inference. N.T. 717

Since the very issue Appellant claims not to have been raised, in fact, was raised and adequately disposed of, his argument of ineffectiveness has no merit.

Judgment of sentence is affirmed.

McDERMOTT, J., did not participate in the consideration or decision of this case.

that he did attempt to conceal evidence of the crime, you may infer consciousness of guilt. However, you are not bound to draw that inference. It is for you and you alone as fact finders to accept or reject this inference of consciousness of guilt and to give whatever weight, if any, you wish to this inference. N.T. 717