572 A.2d 711

**COMMONWEALTH of Pennsylvania**

v.

**Kenneth Joseph FROMAL, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 25, 1990.

Filed March 22, 1990.

102

Vincent J. Quinn, Chief Public Defender, Lancaster, for appellant.

John A. Kenneff, Asst. Dist. Atty., Millerville, for Com., appellee.

Before CIRILLO, President Judge, and WIEAND and BROSKY, JJ.

CIRILLO, President Judge:

Kenneth J. Fromal appeals from a judgment of sentence entered on May 30, 1989 in the Lancaster County Court of Common Pleas. Fromal was sentenced to a term of seven and one half to fifteen years for robbery. 18 Pa.C.S. § 3701(a)(1)(ii). We affirm.

Fromal was charged with robbery in connection with the theft of $18,994.00 from the Quarryville branch of the Bank of Lancaster County ("Bank") on November 20, 1987. Following the disposition of pre-trial motions and a suppression hearing, a jury trial commenced which resulted in a guilty verdict. Fromal's trial counsel filed post-verdict motions and supplemental post-verdict motions. Additionally, Fromal himself filed a lengthy letter with the trial court. Fromal's formal motions and those raised in his *pro se* letter were denied, and this timely appeal followed.

Fromal advances the following issues for our consideration: 1) whether the evidence was sufficient to prove his identity as the perpetrator of the crime, 2) whether the verdict of the jury was against the weight of the evidence when the Commonwealth's evidence establishing identity was based on surmise and conjecture, 3) whether the suppression court properly denied Fromal's motion to suppress

his statements made to the police after his arrest, 4) whether the suppression court erred when it refused to suppress certain physical items seized from Fromal's vehicles pursuant to search warrants, 5) whether trial counsel was ineffective for: a) failing to object to the prosecutor's improper remarks during his closing argument concerning Fromal's right against self-incrimination, and his alleged intent to move to Florida, b) failing to object to the trial court's failure to instruct the jury as to the defense of alibi, c) failing to preserve for appellate review the issue of whether a mistrial was warranted because the Commonwealth failed to disclose certain exculpatory evidence to the defense, and d) failing to object to the admission of a handgun seized from Fromal's vehicle, and the records of Trump Castle concerning Fromal's gambling activities.

Fromal initially contends that the evidence was insufficient to support the jury verdict because the Commonwealth failed to prove beyond a reasonable doubt the identity of the robber.

■ Our standard of review when evaluating the sufficiency of the evidence is well settled:

[W]hether, viewing the evidence in the light most favorable to the Commonwealth [as verdict winner], and drawing all reasonable inferences favorable to the Commonwealth, there is sufficient evidence to find every element of the crime beyond a reasonable doubt.... The Commonwealth may sustain its burden by means of wholly circumstantial evidence.... Moreover, in applying the above test, the entire trial record must be evaluated and all evidence actually received must be considered....

*Commonwealth v. Hunter*, 381 Pa.Super. 606, 610, 554 A.2d 550, 551 (1989) (quoting *Commonwealth v. Griscavage*, 512 Pa. 540, 543, 517 A.2d 1256, 1257 (1986)). Additionally, the circumstantial evidence need only produce a moral certainty beyond a reasonable doubt in order to sustain a conviction; it need not be absolutely incompatible with innocence. *Commonwealth v. Feinberg*, 211 Pa.Super. 100, 113, 234 A.2d 913, 919 (1967). The Commonwealth

concedes that the evidence utilized to establish the identity of the robber is wholly circumstantial. The evidence, read in the light most favorable to the Commonwealth, is as follows:

During the afternoon of November 20, 1987, a masked gunman entered the Bank and announced his intention to rob it. He was masked so that only his eyes were visible and he was clothed such that only his hands were in sight. The robber then directed Jean Aukamp, the head teller of the Bank, to remove the money from the teller drawers and place it in a white plastic bag which had red printing on it. According to a Bank audit, $18,994.00 was taken in denominations of ones, fives, tens, twenties and fifties. Some of the bills were packaged with rubber bands while others were packaged with paper clips. The robber remained in the Bank for approximately five to ten minutes. Aukamp testified that she was certain she recognized the voice, but was unable to identify it until later, at approximately 2:00 a.m., when she concluded that the voice belonged to Fromal. Fromal had been a frequent customer of the Bank for two years prior to the robbery. During those visits, Aukamp had numerous opportunities to converse with Fromal.

Aukamp testified that she was ninety percent certain that the voice of the robber was that of Fromal. Further, Aukamp testified that the robber's hands were similar to Fromal's, and that the robber was between 5′3″ and 5′6″ tall with a build resembling that of Fromal. Another teller, Bonnie Kauffman, also testified that Fromal's height was similar to the robber's height.

Three eye witnesses testified that they observed the robber leaving the scene in a late model, four-door, maroon or burgundy automobile with a vinyl top. At the time of his arrest, Fromal was driving and owned a maroon Oldsmobile sedan. One of the witnesses to the robbery, Robert Hall, viewed a photograph of Fromal's vehicle taken by police and stated that it looked "exactly" like the one which he saw the robber driving.

Subsequent to Fromal's arrest, the police searched a van parked at Fromal's residence which contained a box with two toy handguns. Prior to trial, the police showed the toy handguns and two authentic handguns to Aukamp, who identified one of the toy handguns as similar to the one used in the robbery. Further, a search of the van also revealed a white plastic bag containing $5,000.00 in twenties and fifties. A search of Fromal's automobile disclosed $3,910.00 in fives, tens, twenties and fifties fastened with paper clips.

After Fromal was arrested and administered his Miranda warnings, he made certain statements to the police. Specifically, he told them that he was in Atlantic City, New Jersey on the date of the robbery gambling at two casinos, Resorts and Trump Castle. Fromal contended that he was at Trump Castle between 2:30 p.m. and 3:00 p.m. on the date of the robbery, and that he was playing at a one hundred dollar table. Apparently, the management of Trump Castle records the names of players at such tables. It should be noted that Fromal himself did not testify; this evidence was introduced through the testimony of the arresting officer, Trooper Raymond E. Solt.

The Commonwealth went to great lengths to refute Fromal's statement that he was in Atlantic City when the robbery occurred. Beth Quirk, a "casino analyst," employed by Trump Castle, explained that certain players in order to receive "comps" such as free rooms, desire to be "rated" by the casinos. When a person is rated, the casino records the gambling activities of that person, the time period during which the gambler played, the amount gambled, and the amount won and lost. Floor personnel initially compile such data, and then it is forwarded to Quirk's department where it is eventually recorded and stored in a computer. Although a rated player's activities are only recorded if that player affirmatively requests such recordation, a player who makes wagers of one hundred dollars or more automatically has his or her name recorded regardless of that player's wishes, unless the recording

employee does not know the name of that player and that player does not provide it.

The above records indicated that Fromal gambled at Trump Castle on October 20, and 21, 1987, and on November 22, 1987, but not on November 20, 1987, the date of the robbery. Fromal indicated to police that the money in his possession was the proceeds from the recent sale of his home. The Commonwealth introduced evidence of Fromal's recent banking and gambling activities to disprove this contention. On October 19, 1987 Fromal's checking account had a balance of $173.13. Fromal had sold his home for $19,506.19, and on October 20, 1987, he made a deposit of $15,000.00 while taking the remaining $4,506.19 in cash. Fromal made an additional deposit of $3,623.00 between October 20, 1987 and November 20, 1987. Fromal withdrew $3,625.00 in cash and wrote checks to third parties totalling $15,190.00. On November 20, 1987, Fromal had a balance of $808.00 in his checking account. The casino records reflect that Fromal purchased $6,000.00 worth of betting chips, $3,000.00 of which he lost, for use on table games on November 22, 1987. Between October 20, 1987 and November 22, 1987, Fromal purchased additional gambling tokens in the amount of $9,100.00 for use in slot machines, $1,875.00 of which he lost.

The Commonwealth maintains that Fromal did not have sufficient "legitimate" funds capable of providing him with $6,000.00 on November 22, 1987 to purchase betting chips, and to still have $8,900.00 in his possession at the time of his arrest.

 Fromal contends that the direct evidence of Aukamp's voice identification, coupled with the circumstantial evidence presented to bolster it, was insufficient to establish his identity beyond a reasonable doubt. We disagree. It is settled law that "[a] witness may testify to a person's identity from his voice alone." *Commonwealth v. Woodbury*, 329 Pa.Super. 34, 40, 477 A.2d 890, 893 (1984) *citing Commonwealth v. Reid*, 448 Pa. 288, 292 A.2d 297 (1972). Moreover, evidence of identification need not be positive

and certain to sustain a conviction. *Woodbury,* 329 Pa.Super at 40, 477 A.2d at 893 (quoting *Commonwealth v. Hickman,* 453 Pa. 427, 309 A.2d 564 (1973)). Additionally, the weight to be accorded voice identification testimony is a question for the trier of fact. *Id.*

In *Woodbury,* this court, presented with a sufficiency of the evidence challenge to a murder conviction, found that a voice identification alone by a witness, who was familiar with the appellant's voice and had a "long existing acquaintanceship" with him, was sufficient to identify the appellant as the person who committed the murder. *Woodbury,* 329 Pa.Super. at 40, 477 A.2d at 893. Here, like the witness in *Woodbury,* Aukamp was familiar with Fromal's voice by virtue of his frequent visits to the Bank. Additionally, unlike the witness in *Woodbury,* Aukamp's testimony was not limited merely to a voice identification; she also testified that the robber's hands were similar to Fromal's, and that the robber's physical build resembled that of Fromal. Further, there was a significant amount of evidence offered by the Commonwealth which, if believed, would lead a jury to conclude that Fromal was the perpetrator of the robbery.

Although the evidence recited above is not overwhelmingly conclusive, when viewing it in the requisite light, and drawing all reasonable inferences therefrom, it is sufficient to establish beyond a reasonable doubt that Fromal was the perpetrator of the robbery of the Bank. *Hunter, supra.*

Fromal next argues that the jury verdict was against the weight of the evidence because the identification of Fromal was based on pure conjecture. We disagree. Whether to grant a new trial on the ground that the verdict was against the weight of the evidence is within the sound discretion of the trial court whose decision will not be disturbed absent an abuse of that discretion. *Hunter,* 381 Pa.Super. at 617, 554 A.2d at 555; *Commonwealth v. Pronkoskie,* 498 Pa. 245, 251, 445 A.2d 1203, 1206 (1982). Clearly, the weight of the evidence is exclusively for the finder of fact, *Commonwealth v. Thomas,* 444 Pa. 436, 282 A.2d 693 (1971), who is free to believe all, part, or none of the evidence, and

determine the credibility of the witnesses. *Commonwealth v. Dreibelbis*, 493 Pa. 466, 469, 426 A.2d 1111, 1113 (1981). Moreover, in order for this court to grant a new trial on the ground that the verdict was against the weight of the evidence, it must be apparent from the record, "that the verdict was so contrary to the evidence as to shock one's sense of justice and make the award of a new trial imperative." *Hunter*, 381 Pa.Super. at 617, 554 A.2d at 555; *Commonwealth v. Gamber*, 352 Pa.Super. 36, 45, 506 A.2d 1324, 1329 (1986). Based upon our review of the evidence, we conclude that the verdict was not so contrary to the weight of the evidence as to shock our sense of justice. Accordingly, a new trial is not required.

▆▆▆ Next, Fromal contends that the suppression court erred in not suppressing his statements that were the product of an unlawful warrantless arrest, because the arrest was made without the requisite probable cause. We disagree. In an appeal from the denial of a motion to suppress our role is to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. *Commonwealth v. Reddix*, 355 Pa.Super. 514, 518, 513 A.2d 1041, 1042 (1986). In making this determination, we may consider only the evidence of the prosecution's witnesses and so much of the evidence of the defense as, fairly read in the context of the record as a whole, remains uncontradicted. *Id.* When the factual findings of the suppression court are supported by the evidence, we may reverse only if there is an error in the legal conclusions drawn from those factual findings. *Reddix*, 355 Pa.Super. at 518, 513 A.2d at 1042.

The arresting officer, Trooper Solt, did not himself have sufficient knowledge of the facts and circumstances of the case to have probable cause to arrest Fromal. However, Solt was instructed by Sergeant Harnish to arrest Fromal. Peter J. Chimienti, the chief investigating officer assigned to this case, was aware of all the items listed in the affidavit actually prepared in support of the arrest. Chi-

mienti had related most of the information contained in the affidavit to Sergeant Harnish and Lieutenant Evanko. Specifically, Chimienti informed them that: 1) the head teller of the Bank, Aukamp, had identified the voice of the robber as that of Fromal, 2) the description of the robber's physical statute provided by Aukamp matched Fromal's physical stature, 3) the description of the robber's automobile provided by several witnesses matched Fromal's car, 4) Fromal had rented a moving van and loaded it with his personal belongings, and 5) Fromal had announced to his wife an intention to relocate to Florida in the immediate future.

An arresting officer is not required to have sufficient information to establish probable cause for the arrest so long as the officer ordering the arrest possessed sufficient information giving rise to probable cause. *Commonwealth v. Kenney*, 449 Pa. 562, 567, 297 A.2d 794, 796 (1972); *see also Whiteley v. Warden*, 401 U.S. 560, 568, 91 S.Ct. 1031, 1037, 28 L.Ed.2d 306 (1971). Further, an arresting officer in executing a valid arrest may rely on radio broadcasts emanating from police authorities in one of the following instances: 1) when he is ordered or directed to perform the arrest by an officer in possession of facts justifying the arrest, 2) when he receives information over the radio justifying the arrest, or 3) when a combination of facts heard over the radio and acquired otherwise provides requisite probable cause. *Reddix*, 355 Pa.Super. at 519, 513 A.2d at 1043. Consequently, since Solt, the arresting officer, did not have sufficient knowledge to constitute probable cause justifying the arrest, the determinative issue is whether Sergeant Harnish possessed sufficient information to give rise to probable cause when he ordered the arrest of Fromal.

In *Commonwealth v. York*, 381 Pa.Super. 55, 552 A.2d 1092 (1989), this court stated:

A lawful arrest may be made without a warrant if an officer, given all of the circumstances known to him and his practical common sense decision therefrom, had probable cause to believe that a crime was committed ...

*Id.* 381 Pa.Super. at 61, 552 A.2d at 1095. Probable cause is demonstrated if the reasonably reliable information within the knowledge of the officer would warrant a man of reasonable caution to believe that the suspect had committed a crime. *Kenney,* 449 Pa. at 567, 297 A.2d at 796. Here, the information given to Sergeant Harnish was sufficient to believe that Fromal had committed the robbery. Since the arrest was based upon probable cause, it was lawful, and Fromal's statements could not have been the product of an unlawful arrest. Therefore, the suppression court was correct in denying Fromal's motion to suppress his post-arrest statements.

Fromal next asserts that the suppression court erred when it refused to suppress certain physical items seized pursuant to search warrants which were based upon affidavits that did not contain probable cause to believe that the items would be in the location searched.[1] We disagree.

Initially, we note that the issuing magistrate's determination of probable cause should be afforded great deference by appellate courts. *Commonwealth v. Frye,* 242 Pa.Super. 144, 148, 363 A.2d 1201, 1203 (1976). Probable cause exists when the facts and circumstances set forth in the affidavit are sufficient to warrant a man of reasonable caution in believing that the contraband to be seized will be in the specified place. *Id.* In *Commonwealth v. Gray,* 509 Pa. 476, 503 A.2d 921 (1985), our supreme court adopted the totality of the circumstances standard in analyzing whether probable cause existed for the issuance of a search warrant. *Gray,* 509 Pa. at 485, 503 A.2d at 926. *See Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The task of the issuing magistrate is to make a common sense decision based upon all the circumstances before him as to whether there is a "fair probability that contraband or evidence of a crime will be found in a particular place. *Gates,* 462 U.S. at 238, 103 S.Ct. at 2332.

---

1. In Fromal's automobile, the police discovered $3910.00 in cash, a .32 caliber handgun, and eighteen rounds of ammunition. In Fromal's van, the police found two plastic silver toy guns, two plastic bags, and $5,000.00 in cash.

The duty of a reviewing court is to ensure that the magistrate had a "substantial basis for concluding that probable cause existed." *Id.* at 238–239, 103 S.Ct. at 2332–33.

 The facts set forth in the affidavit disclosed that Fromal was residing temporarily with his brother; that he intended to move to Florida; and that a small moving van was parked outside Fromal's temporary residence into which he was loading his and his children's belongings. In light of Fromal's living situation immediately after the robbery, it would seem that the van and Fromal's automobile would be the only logical places to keep the fruits of a crime. Based upon the information contained in the affidavit, there was a fair probability that contraband or evidence of a crime would be found in those vehicles. Since the magistrate had a substantial basis for concluding that probable cause existed to find the contraband in Fromal's vehicles, the trial court did not err in denying the motion to suppress the evidence found pursuant to those warrants.

 Fromal next asserts the first of a series of trial counsel ineffectiveness claims. It is well settled that when confronted with a claim of ineffective assistance of counsel we must first ascertain whether the issue underlying the charge is of arguable merit, and if so, we must then determine whether the course chosen by counsel had some reasonable basis designed to promote the client's interests. *Commonwealth v. Golson,* 310 Pa.Super. 532, 535, 456 A.2d 1063, 1065 (1983). Additionally, one claiming ineffective assistance of counsel must demonstrate that he or she was prejudiced by the ineffectiveness by illustrating that counsel's conduct had an adverse affect on the outcome of the proceedings. *Commonwealth v. Pierce,* 515 Pa. 153, 162, 527 A.2d 973, 977 (1987). The burden of proving ineffective assistance of counsel rests squarely upon the appellant. *Commonwealth v. Westcott,* 362 Pa.Super. 176, 203, 523 A.2d 1140, 1153 (1987), *alloc. denied,* 516 Pa. 640, 533 A.2d

712 (1987).[2]

Fromal contends that trial counsel was ineffective for failing to object to the improper closing argument of the prosecutor which infringed upon Fromal's constitutional right against self-incrimination by referring to Fromal's post-arrest statements as testimony. Fromal asserts that the prosecutor's comments constituted prosecutorial misconduct.[3]

2. The Commonwealth erroneously states that Fromal's claims of ineffective assistance of counsel are governed by the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq.* It is clear that the PCRA is only concerned with collateral relief and is not relevant to a direct appeal from a judgment of sentence. *See* 42 Pa.C.S. § 9542 ("This subchapter is not intended to limit the availability of remedies in the trial court or on direct appeal from the judgment of sentence ..."). Therefore, Fromal's ineffectiveness claims are subject to the standard of review set forth above, not the more stringent standard found in the PCRA.

3. The statements made by the prosecutor which Fromal maintains infringed upon his constitutional right not to testify are as follows:

... I want to caution you that when you use the principle of reasonable doubt, you must remember that reasonable doubt is not created solely because two people say two different things. Mrs. Aukamp says it was Mr. Fromal who was in the bank. Mr. Fromal says I wasn't in the bank. That doesn't create reasonable doubt.

You must first determine who is telling the truth. Is it Mrs. Aukamp or is it Mr. Fromal? And then apply the reasonable doubt standard to the person whose testimony you choose to believe. How do you go about evaluating the testimony of the people who have testified in this case? And in reality I think what you have is the testimony of two people.

One, Mrs. Aukamp who testified that it was, in fact, Mr. Fromal. *And Mr. Fromal who spoke to you through Trooper Solt and said I did not commit this crime, I was in Trump's Casino in Atlantic City at the time the crime occurred.*

Is Mr. Fromal telling the truth or is Mrs. Aukamp telling the truth?

\* \* \* \* \* \*

.... [I]f you feel that Mrs. Aukamp intentionally lied when she immediately said I recognized the voice, I know that voice, that's something important. That's something material. You can then disregard her testimony.

If you feel that Mr. Fromal, when he told Trooper Solt I was in Atlantic City, if you feel he was intentionally lying, then you can disregard his testimony and his statements that I did not do this and look to Mrs. Aukamp, decide that she is being truthful and apply the reasonable doubt standard to her testimony.

Fromal's inventive argument is that by commenting on his statements made to the police as if they were testimony, the prosecutor intended for it to appear that Fromal testified and claimed an alibi defense. Fromal argues that the unfairness in commenting on his post-arrest statements as if they were testimony, is that he, in fact, did not testify and that he has a right not to have a prosecutor intimate that he did.

 It is elemental that "a lawyer's comments to a jury will not be reviewed in isolation, but will be assessed in the context in which they were spoken." *Commonwealth v. Sparks*, 351 Pa.Super. 320, 326, 505 A.2d 1002, 1005 (1986). A prosecutor, as well as a defense attorney, must be afforded reasonable latitude in presenting a case to the jury, and must be allowed to present his or her arguments with logical force and vigor. *Commonwealth v. D'Amato*, 514 Pa. 471, 489, 526 A.2d 300, 309 (1987); *Commonwealth v. Smith* 490 Pa. 380, 387, 416 A.2d 986, 989 (1980). Further, counsel's remarks to the jury may include fair deductions and legitimate inferences from the evidence presented. *D'Amato*, 514 Pa. at 489, 526 A.2d at 309; *Commonwealth v. Stevens*, 276 Pa.Super. 428, 419 A.2d 533 (1980). Moreover, "[c]omments by a prosecutor do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict." *D'Amato*, 514 Pa. at 490, 526 A.2d at 309 (citations omitted) (quoting *Commonwealth v. Carpenter*, 511 Pa. 429, 439, 515 A.2d 531, 536 (1986)).

Additionally, Fromal maintains that three other statements made by the prosecutor infringed upon his constitutional right not to testify:
1) Now let's look at what Mr. Fromal has said.
2) But even if you believe the second version of the story, what does that tell you about the truthfulness of Mr. Fromal's version that he was in Atlantic City on the 20th [the date of the robbery].
3) I am going to suggest to you that you go back again to what I started my summation with. Who is the believable person?

■ Initially, we must determine whether it was proper for the prosecutor to discuss Fromal's post-arrest statements in his closing argument. The comments by the prosecutor that Fromal maintains infringed upon his constitutional right to remain silent, and not testify, concerned the statements made by Fromal after he was given his *Miranda* warnings.[4] The prosecutor was free to comment on Fromal's statements to the police, "because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent. As to the subject matter of his statements, the defendant has not remained silent." *Anderson v. Charles*, 447 U.S. 404, 408, 100 S.Ct. 2180, 2182, 65 L.Ed.2d 222 (1980) (per curiam); *D'Amato, supra.* Here, Fromal did not remain silent after receiving his *Miranda* rights, therefore, any comments concerning the subject matter of these statements did not implicate his right to remain silent at trial, but rather his choice not to remain silent after being so advised.

Confronted with the realities of the above conclusion, Fromal maintains that it was improper for the prosecutor to comment on his post-arrest statements as if they were testimony. A review of the alleged improper portions of the prosecutor's closing argument reveals a limited reference to Fromal's statements as testimony. When viewing this reference in the context in which it was spoken, we do not find that it could lead the jury to conclude that Fromal had testified, or that he should have testified. The prosecutor commented frequently on Fromal's post-arrest statements without labelling them testimony, specifically stating at one juncture, "... Mr. Fromal who spoke to you through Trooper Solt ..." Contrary to Fromal's assertions, a slight transgression in a protracted summation does not give rise to prosecutorial misconduct. Therefore, this claim is of no arguable merit, and counsel will not be deemed ineffective for failing to assert it. *Commonwealth v. Silo*, 509 Pa. 406, 410, 502 A.2d 173, 175 (1985).

4. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Next, Fromal maintains that trial counsel was ineffective for failing to object when the trial court failed to instruct the jury on the defense of alibi. Defense counsel at trial did not affirmatively pursue an alibi defense. However, the Commonwealth raised the issue of alibi through the presentation of Fromal's statements to the police after his arrest. Fromal, as mentioned previously, stated that he was in Atlantic City on the date of the robbery. Although we agree with Fromal that the defense of alibi was raised during the course of trial, we do not feel that a specific alibi instruction was necessary.

Alibi is defined as "a defense that places the defendant at the relevant time in a different place than the scene involved and so removed therefrom as to render it impossible for him to be the guilty party." *Commonwealth v. Roxberry*, 381 Pa.Super. 314, 319, 553 A.2d 986, 989 (1988) (quoting *Commonwealth v. Whiting*, 409 Pa. 492, 498, 187 A.2d 563, 566 (1963)). Clearly, if Fromal's statements were true he would have had a valid alibi defense since he would have been sufficiently removed from the scene of the crime.

Fromal, relying upon this court's decision in *Commonwealth v. Van Wright*, 249 Pa.Super. 451, 378 A.2d 382 (1977), argues that since evidence of alibi was introduced, he was entitled to an alibi instruction. To illustrate why we disagree with Fromal's argument and with the relevant portion of the *Van Wright* decision it is necessary to examine *Commonwealth v. Bonomo*, 396 Pa. 222, 151 A.2d 441 (1959), and the specific rule it espoused.

The primary purpose of *Bonomo* was to overrule prior cases which held that alibi was an affirmative defense that had to be proven by a preponderance of the evidence, and that failure to instruct the jury as such would constitute reversible error. *Bonomo*, 396 Pa. at 231, 151 A.2d at 446; *see Commonwealth v. Stein*, 305 Pa. 567, 158 A. 563 (1932); *Commonwealth v. Andrews*, 234 Pa. 597, 83 A. 412 (1912). The court in *Bonomo* stated:

It is the law that in a criminal case, unlike a civil case, no binding instruction may be given in favor of the prosecu-

tion. This is true whether the evidence upon which the prosecution rests is oral or documentary and is equally true no matter how strong the proof proffered by the prosecution may be. It is because of this never-shifting burden upon the Commonwealth to prove every essential element of the charge against the defendant that it cannot logically be said that the Commonwealth has the burden to prove the presence of such element while the defendant, at the same time, has the burden of proving its absence. Hence, whenever the prosecution relies upon proof that the defendant is present at the commission of the crime, it cannot be said with any show of reason that the defendant, who asserts he was absent, has any burden of proving it.

*Bonomo,* 396 Pa. at 230, 151 A.2d at 445–446.

■ An alibi instruction is necessary when an alibi defense is presented because of the danger that the failure to prove the defense will be taken by the jury as a sign of the defendant's guilt. *Commonwealth v. Pounds,* 490 Pa. 621, 633–634, 417 A.2d 597, 603 (1980).[5] The instruction on alibi is to emphasize that the defendant is not required to disprove any elements of the crime charged, but that the defense's evidence of alibi, even if not wholly believed, may create a reasonable doubt.

■ *Bonomo,* in an attempt to clarify the defense of alibi, and when an instruction on it is required, explicitly set forth the rule which was to be followed in the Commonwealth:

The Commonwealth has the burden of proving every essential element necessary for conviction. If the *defendant* traverses one of those essential elements by evidence of alibi, his evidence will be considered by the jury along with all the other evidence. It may, either standing alone or together with other evidence, be sufficient to

**5.** In *Pounds,* the supreme court held that, "the testimony of the accused may, by itself, be sufficient to raise an alibi defense and entitle him to an appropriate jury instruction." *Pounds,* 490 Pa. at 632, 417 A.2d 602. *See* Pennsylvania Standard Jury Instructions, Criminal, § 3.11.

leave in the minds of the jury a reasonable doubt which, without it, might not otherwise exist. It will be the duty of the trial judge to carefully instruct the jury as to the relationship of the evidence of the prosecution and the evidence of the defendant as each bears upon the essential elements of the crime charged. This must be done without unfair disparagement although the trial judge must be left free to comment upon the evidence, as he has done heretofore, so long as he leaves the jury free to find its own true verdict.

*Bonomo,* 396 Pa. at 231–232, 151 A.2d at 446. (emphasis added). *Bonomo* unequivocally states that if the *defendant* traverses one of the essential elements by evidence of alibi, that evidence must be considered by the jury. *Id.* The sentence immediately following states, "[i]t may, either standing alone, or together with other evidence, be sufficient to leave in the minds of the jury a reasonable doubt ..." *Id.* "It" refers only to the defendant's evidence of alibi. Consequently, if the defendant presents evidence of alibi, he or she should have the benefit of a jury instruction on such evidence.

In *Van Wright,* this court stated:

A defendant is not entitled to an [alibi] instruction under *Commonwealth v. Bonomo, supra,* unless there is some testimony in the record, *introduced by either the defense or the Commonwealth,* raising the possibility of an alibi defense.

*Van Wright,* 249 Pa.Super. at 457, 378 A.2d at 385 (emphasis added). The rule set forth in *Bonomo* did not state this. *Van Wright* incorrectly interpreted *Bonomo* to import that an alibi instruction is necessary whenever there is evidence introduced by the defense or the Commonwealth raising the possibility of an alibi defense. *Van Wright, supra. Bonomo,* however, only requires an alibi instruction when the *defense,* not the Commonwealth, presents evidence of alibi.

*Bonomo, supra.* In *Van Wright,* as in *Bonomo,* it was the defense who presented evidence of alibi.[6]

Moreover, since the defense and not the Commonwealth presented the evidence of alibi in *Van Wright,* the above statement discussing *Bonomo* was not necessary to the disposition of that particular case, and therefore was merely dictum. In *In re Trust Estate of Pew,* 411 Pa. 96, 191 A.2d 399 (1963) (overruled on other grounds *Estate of Tyler,* 474 Pa. 148, 377 A.2d 157 (1977)), the supreme court stated that, "[g]eneral expressions in an opinion must be considered in the light of and cannot be dissevered from the facts of that case; what is actually decided and controlling is the law applicable to that particular case and while other statements and conclusions therein are entitled to great consideration they are not controlling." *Id.,* 411 Pa. at 103, 191 A.2d at 404.

The following passage from *United States v. Booz,* 451 F.2d 719 (3rd Cir.1972), *cert. denied,* 414 U.S. 820, 94 S.Ct. 45, 38 L.Ed.2d 52 (1973), summarizes the rationale for the necessity of an instruction on alibi when the defense pursues it, and illustrates why such an instruction is not needed when the Commonwealth introduces alibi:

> [A] [d]efendant is entitled to a specific instruction on burden of proof on alibi issues because the jury is likely to become confused about the burden of proof when an appellant offers this type of evidence. *When affirmative proof, best known by the defendant himself is offered, a likelihood exists that jurors would look to that proof for persuasion of its truth.* But the correct approach is that such proof need only raise a reasonable doubt in the juror's mind as to whether defendant was present at the scene.

**6.** Further, it appears that in all the relevant cases concerning the necessity of an alibi instruction, the defense has introduced evidence of alibi. *See Commonwealth v. Pounds, supra; Commonwealth v. Bonomo, supra; Commonwealth v. Roxberry, supra; Commonwealth v. Brunner,* 341 Pa.Super. 64, 491 A.2d 150 (1985); *Commonwealth v. Johnson,* 336 Pa.Super. 1, 485 A.2d 397 (1984); *Commonwealth v. Van Wright, supra.*

*Booz,* 451 F.2d at 723–724 (emphasis added). Clearly, when the Commonwealth offers evidence of defendant's alibi there is no danger of the jury confusing the burdens of proof because the defense has not sought to prove anything. Likewise, since Fromal has not attempted to persuade the jury of an alibi defense there is no risk that the jury could conclude he failed to satisfy a non-existent burden.

In sum, since the Commonwealth introduced the evidence of alibi, not the defense, the rule espoused in *Bonomo,* and the reasoning underlying its conclusions, did not warrant an alibi instruction. The *Van Wright* court's indication to the contrary was the result of a misinterpretation of *Bonomo's* rule, and was in no way necessary to the disposition of the case before it. Accordingly, this claim is meritless, and trial counsel, under the proceedings of this case, was not ineffective for failing to object to the absence of an alibi instruction. *Silo,* 509 Pa. at 410, 502 A.2d at 175.

 Fromal next contends that trial counsel was ineffective for failing to object to portions of the prosecutor's closing argument which were not included in the record. Specifically, Fromal maintains that the prosecutor improperly suggested that Fromal was intending to move Florida. Fromal argues that this suggestion prejudiced him by implying his flight after the commission of the robbery, from which the jury could infer his guilt.

The prosecutor made four references to Fromal's intention to relocate to Florida:

1) If you're getting ready to move to Florida and you have money that you want to take down to Florida with you, how do you take it?

2) Why is [Fromal] down there on the 22nd packing up his family, getting them ready to leave the area, move to Florida?

3) What happened here? Mr. Fromal separated, he got a windfall from his house, he was going to relocate to Florida.

4) I suggest to you that you can find from this evidence that Mr. Fromal squandered that nest egg. He made his preparations to go to Florida.

Although it is not apparent from the evidence that Fromal was intending to move to Florida, there was evidence of some imminent relocation. Moreover, the four references alluding to Fromal's relocation were not made in the context of implying guilt through flight, but rather to illustrate that Fromal had squandered the proceeds of the sale of his home, and needed money in order to finance the impending move to Florida. It is clear that, "a lawyer's comments to a jury will not be reviewed in isolation, but will be assessed in the context in which they were spoken." *Commonwealth v. Sparks*, 351 Pa.Super. 320, 326, 505 A.2d 1002, 1005 (1986). When the prosecutor's comments are viewed in the context in which they were spoken, it becomes apparent that they did not imply that Fromal was fleeing the crime. Further, since we cannot conclude that the "unavoidable effect of these comments would be to prejudice the jury, ... so that they could not weigh the evidence objectively and render a true verdict," *D'Amato*, 514 Pa. at 490, 526 A.2d at 309 (citations omitted), this claim is of no arguable merit. *Silo, supra.*

▪ Next, Fromal maintains that trial counsel was ineffective for failing to include in his post-verdict motions a challenge to the trial court's denial of his motion for mistrial because the Commonwealth failed to disclose exculpatory evidence prior to trial. We disagree. Although defense counsel requested exculpatory evidence during pre-trial discovery, the Commonwealth did not disclose that Isabella Alexander, a teller at the Bank, had identified the voice of the robber as being similar to that of another Bank customer, Howard Mogul. Defense counsel discovered this evidence when he received a phone call while the case was in progress. Apparently, Peter Chimienti, the prosecuting state trooper, did not disclose this evidence to the district attorney's office. Upon discovering this information, de-

fense counsel moved for dismissal of the charges, and alternatively, a mistrial.

The trial court denied defense counsel's requests, but did permit a brief continuance to allow him to prepare his case in light of the newly discovered evidence. Defense counsel did, in fact, call as witnesses Isabella Alexander and Howard Mogul, and was given an opportunity to cross-examine Chimienti regarding his omission of Alexander's identification of Mogul's voice from his police report.

The Supreme Court of the United States has held that suppression by the prosecution of evidence favorable to an accused which was requested by the accused can constitute a violation of due process if the evidence is material. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963). *See also Commonwealth v. Bonacurso*, 500 Pa. 247, 455 A.2d 1175 (1983); Pa.R.Crim.P. 305. In *Brady*, the nondisclosed evidence was initially discovered by the defense after trial and sentencing. Here, the evidence was disclosed during trial, and the defense was afforded time to review the evidence and competently incorporate it into Fromal's defense.

> This is not a situation where the withheld information was discovered only after conviction but one where the evidence became available to the defense during trial. Moreover, the defense had the opportunity to effectively present this evidence before the jury. Under these circumstances, we find no justification for granting a new trial. The rationale for doing so in *Brady* ... was that the jury convicted without the benefit of the non-disclosed testimony. Such a purpose would not be served in this case where the jury did consider the evidence in question before reaching its verdict. We therefore hold that even if the evidence would be deemed to be exculpatory, where it is effectively presented at trial and the belated disclosure does not prejudice the defense, no due process violation has occurred.

*Commonwealth v. Murphy*, 493 Pa. 35, 45–46, 425 A.2d 352, 357 (1981). Here, like in *Murphy*, since the defense

had the opportunity to effectively present this evidence before the jury, and the jury convicted Fromal with the benefit of the originally non-disclosed evidence, the delayed disclosure did not prejudice the defense. Because a post-verdict motion requesting a mistrial due to the non-disclosure of the exculpatory evidence would have proven futile, this claim is meritless. *Silo, supra.*

Lastly, Fromal contends that trial counsel was ineffective for failing to preserve for appellate review the trial court's error in admitting into evidence a .32 caliber handgun and gambling records from Trump Castle. Fromal argues that the handgun and the records were prejudicial and irrelevant. We disagree.

Preliminarily, we note that "[t]he admission or exclusion of evidence is a matter specifically within the discretion of the trial judge, and we will not reverse his decision absent an abuse of that discretion." *Commonwealth v. Meadows,* 381 Pa.Super. 354, 366, 553 A.2d 1006, 1012 (1989). This court has defined relevant evidence as follows:

> Evidence is relevant if it tends to make more or less probable the existence of some fact material to the case, it tends to establish facts in issue or when it in some degree advances the inquiry and thus has probative value.

*Commonwealth v. Shain,* 324 Pa.Super. 456, 462–463, 471 A.2d 1246, 1249 (1984).

With the above principles in mind, we turn to the admissibility of the .32 caliber handgun. All that is required before a weapon may be introduced into evidence is a sufficient foundation demonstrating circumstances justifying an inference of the likelihood that the weapon was used in the course of the crime charged. *Commonwealth v. Clark,* 280 Pa.Super. 1, 4–5, 421 A.2d 374, 376 (1980); *Commonwealth v. Ford,* 451 Pa. 81, 301 A.2d 856 (1973). The Commonwealth is not compelled to establish that the particular weapon to be introduced was the actual weapon used in the commission of the crime. *Clark,* 280 Pa.Super.

at 6, 421 A.2d at 376; *Commonwealth v. Brown,* 467 Pa. 512, 359 A.2d 393 (1974).

We find that the fact that Fromal possessed this weapon at the time of his arrest provided him with the means to accomplish the crime of robbery, and is therefore a relevant part of the Commonwealth's case. *Clark, supra.* Thus, since the weapon was relevant, the admission into evidence of the .32 caliber handgun was not an abuse of discretion, and this claim is of no arguable merit. *Silo, supra.*

 Fromal also contends that the records from the Trump Castle were not relevant since they only documented information of those who wished to be recorded. Fromal himself, however, informed police that a player who placed minimum wagers of one hundred dollars was automatically recorded. Quirk, the casino analyst, clarified Fromal's statement by testifying that a person who placed minimum wagers of one hundred dollars was automatically recorded if his identity was known to the casino employee, or if he informed the casino employee of his identity. Since it was introduced into evidence that Fromal maintained he was at Trump Castle in Atlantic City on the date of the robbery, placing wagers of one hundred dollars, the records of his gambling activities at Trump Castle were relevant in that they tended to make more or less probable a fact material to the case: whether Fromal was in Atlantic City on the date of the robbery. *Shain, supra.* As the trial judge correctly noted, the arguments raised by Fromal's defense counsel, which are essentially the same arguments raised by his subsequent counsel on appeal, concern the weight of the evidence, and not its admissibility. Clearly, the weight to be accorded evidence is for the finder of fact to determine. *Brown,* 489 Pa. at 306, 414 A.2d at 81. Because the records of Fromal's gambling activities at Trump Castle were relevant, their admission did not constitute an abuse of discretion, and Fromal's contention is meritless. *Silo, supra.*

Judgment of sentence affirmed.