J-S34043-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                          :              PENNSYLVANIA
                                            :
                       v.                        :
                                            :
                                            :
FREDERICK E. OWENS             :
                                            :
                   Appellant           :    No. 501 MDA 2021

Appeal from the PCRA Order Entered March 29, 2021
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0004271-2015

BEFORE:  DUBOW, J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:          **FILED:  DECEMBER 16, 2021**

Frederick E. Owens (Appellant) brings this appeal from the order entered in the Dauphin County Court of Common Pleas, dismissing his first petition for collateral relief filed pursuant to the Post Conviction Relief Act (PCRA).[1] Appellant seeks relief from the judgment of sentence imposed following his jury conviction of aggravated assault.[2]  On appeal, he contends the PCRA court erred when it dismissed his claims that:  (1) trial counsel was ineffective for failing to request an alibi instruction; and (2) he was entitled to a new trial based upon after-discovered exculpatory evidence, namely an affidavit from the victim recanting her statement to police.  For the reasons below, we affirm.

---

[1] 42 Pa.C.S. §§ 9541-9546.

[2] 18 Pa.C.S. § 2702(a)(1).

In the decision affirming Appellant's judgment of sentence on direct appeal, a panel of this Court adopted the trial court's summary of the facts presented during Appellant's jury trial, as follows:

On June 16, 2015, Yomaris Ruiz–Santiago walked over to her sister's apartment. Upon arriving at the apartment she heard yelling and screaming and saw her sister, Zuleika Marcucci,[3] was badly injured. Marcucci was arguing with her boyfriend [Appellant] and Ruiz–Santiago demanded that [Appellant] let her sister go. Marcucci and Ruiz–Santiago left the apartment unhindered and made their way to their mother's home.

Ruiz–Santiago saw that her sister was bruised all over, crying and nervous and limping. Their mother called their pastor and his wife at Marcucci's request. They came over and ultimately took Marcucci to the hospital.

Waleska Cruz, the pastor's wife, recalled entering the home and finding Marcucci in bed. She was screaming and crying that she was going to die and asked them to pray over her. Marcucci uncovered herself and they saw that she was covered head-to-toe in bruises. They obliged and prayed over her until she calmed down, and then took her to the hospital.

Following Marcucci's release [from] the hospital, she stayed with the Cruzes. Marcucci was afraid to return home because the person who injured her might return. She was unable to move, Waleska bathed her, fed her, helped her walk and sit. Four days later, Waleska asked a still unwell Marcucci to leave because Marcucci was secretly communicating with Appellant.

Medical records show that Marcucci suffered from tenderness in the area of the L1 lumbar spine, which was consistent with a nondisplaced fracture of the left L1 transverse process. A CT scan showed a fracture in this area and the notes indicated that surgery was not necessary, however, it would take two to three months to heal. [N]otes also indicated that Marcucci

---

[3] As the PCRA court notes in its opinion, the victim's last name is now "Cadiz." PCRA Ct. Op., 12/31/20, at 5 n.6. However, we will refer to her as "Ms. Marcucci" in this decision.

reported she was assaulted "last night into today" with fists, a hammer and a drumstick and she reported hearing loss in her left ear. She rated her pain level as 10.

On June 18, 201[5], [Detective Quinten] Kennedy of the Harrisburg Police Department, went to the apartment [where] the assault took place. As soon as he entered the apartment, he saw a drumstick laying on the couch. On the second floor, stuffed under clothing in a closet, they discovered a claw hammer with a rubber handle. No DNA testing or fingerprint testing of these items was performed.

He then met with Marcucci at Waleska Cruz's home. He had originally tried to have her come down to the precinct as they prefer to take statement[s] in a more formal setting, but Marcucci was unable to move so he went to her. He saw her covered head-to-toe in bruises and unable to stand.

On June 19, 201[5], [Police] Investigator [Karen] Lyda went to Waleska Cruz's home to take pictures of Marcucci. She witnessed an obviously sore and bruised Marcucci being helped around by someone. Lyda took pictures of a swollen . . . eye, extensive bruising behind her ear, [as well as] on her back, arms, abdomen, breasts, legs, and buttocks. Marcucci was unable to stand up from a seated position on her own, but was able to balance once standing.

On June 29, 201[5], [Detective] Kennedy went to York County Prison to transport Appellant to Dauphin County Prison on these charges. He advised Appellant of his constitutional rights. Nevertheless a brief conversation ensued wherein Appellant indicated he was in York at the time of the assault and not in Dauphin County.

*Commonwealth v. Owens*, 690 MDA 2017 (unpub. memo. at 1-3) (Pa. Super. 2018), *citing* Trial Ct. Op., 7/12/17, at 1–3 (footnote and record citations omitted).

Appellant was subsequently charged with aggravated assault, attempted homicide, unlawful restraint, and theft.[4] The victim, Ms. Marcucci, refused to cooperate with the prosecution. In July of 2015, she sent an email to Detective Kennedy, in which she stated she lied in the police report, Appellant never assaulted her, and she "inflicted [her] injuries to [her]self." Appellant's Second Amended PCRA Petition, 4/21/20, Exhibit C, Email from Marcucci to Detective Kennedy, 7/29/15 (2015 Email). The case proceeded to a jury trial, which commenced on September 6, 2016. Appellant was represented by Ronald Gross, Esquire.

At the start of trial, the Commonwealth noted that Ms. Marcucci had been incarcerated on a material witness warrant based on her failure to appear for a prior trial date in this case.[5] *See* N.T., 9/26-27/16, at 5-6. The Commonwealth informed Ms. Marcucci that if she refused to answer questions when called to testify, she could be held in contempt of court. *Id.* at 7. Subsequently, when the Commonwealth called Ms. Marcucci as a witness, she refused to be sworn in or answer any questions. *See id.* at 35-37. Appellant declined to take the stand and testify in his own defense. *See id.* at 127-30.

---

[4] 18 Pa.C.S. §§ 901, 2501, 2902(a), 3921.

[5] The record also reveals Ms. Marcucci failed to appear three times for Appellant's preliminary hearing. *See* N.T. PCRA H'rg, 6/9/20, at 46.

At the conclusion of trial, the jury found Appellant guilty of aggravated assault, but not guilty of attempted homicide and unlawful restraint.[6] On November 30, 2016, the trial court imposed a sentence of eight and one-half to 20 years' incarceration. A panel of this Court affirmed the judgment of sentence on March 21, 2018, and Appellant did not seek review in the Pennsylvania Supreme Court. *See Owens*, 690 MDA 2017. James Karl, Esquire, represented Appellant on direct appeal.

On July 27, 2018, Appellant filed a timely, *pro se* PCRA petition, alleging that Attorney Gross was ineffective for failing to request an alibi instruction, and that Appellant was entitled to a new trial based upon after-discovered exculpatory evidence. *See* Appellant's Motion for Post Conviction Relief, 7/27/18, at 3. Appellant attached to his petition a signed affidavit from Ms. Marcucci, dated June 18, 2018, in which she avers she falsely accused Appellant of assaulting her, and that he was innocent of the crime for which he was convicted. *See id.*, attachment, Affidavit of Zuleika [Marcucci], 6/18/18. Michael Palermo, Esquire was appointed as PCRA counsel. On February 28, 2019, Attorney Palermo filed a counseled PCRA petition, raising the same claims. After the Commonwealth filed a response pointing out defects in Attorney Palermo's petition,[7] on June 20, 2019, the PCRA court

---

[6] The Commonwealth withdrew the charge of theft prior to trial.

[7] Among other things, Attorney Palermo failed to attach the affidavit from Ms. Marcucci in support of the after-discovered evidence claim. *See* *(Footnote Continued Next Page)*

ordered Attorney Palermo to file an amended petition within 30 days. **See** Order, 6/20/19. When Attorney Palermo failed to comply with the court's directive, the PCRA court appointed present counsel, Wendy Grella, Esquire, to represent Appellant, and directed her to file an amended petition within 60 days. **See** Order, 11/26/19.

Attorney Grella filed an amended PCRA petition on January 24, 2020, followed by a second amended petition on April 21st.[8] In the second amended petition, Attorney Grella reiterated Appellant's claims that trial counsel was ineffective for failing to request an alibi instruction and that he possessed after-discovered exculpatory evidence. **See** Appellant's Second Amended PCRA Petition, 4/21/20, at 5-7 (unpaginated). In addition, Attorney Grella asserted that she "received emails and text messages between trial counsel . . . and the alleged victim," which, she claimed, demonstrated "unethical conduct and possibly a conflict of interest" because counsel was "advising the alleged victim what to do." **Id.** at 7-8. Specifically, she averred Attorney Gross told Ms. Marcucci, "The plan is to have you refuse to testify [and] just lay freaking low[,]" and that he wanted her sister, Ms. Ruiz-Santiago, to do the same. **Id.**

_____

Commonwealth's Response to [Appellant's] Post-Conviction Relief Act Petition, 6/19/20, at 2-3 (unpaginated).

[8] Attorney Grella sought, and was granted, permission to file the second amended petition. **See** Order, 2/25/20; Order, 3/30/20.

The PCRA court conducted an evidentiary hearing on June 9, 2020; Appellant, Attorney Gross, Ms. Marcucci, and Ms. Ruiz-Santiago testified. First, Appellant testified that Ms. Marcucci retained Attorney Gross on his behalf. N.T., PCRA H'rg, at 5. He claimed he told both Attorney Gross and Detective Kennedy that he was in York County on the date of the alleged incident. *Id.* at 6. Moreover, Appellant stated that although he wanted to testify at his jury trial, Attorney Gross counseled him not to. *Id.* at 7. He also acknowledged that he had a prior *crimen falsi* conviction for receiving stolen property, and that the jury would have heard about that conviction if he had testified. *Id.* at 10.

Attorney Gross testified he knew Appellant told Detective Kennedy that he was in another county on the date of the offense, but Appellant was unable to provide him with any "specifics." N.T., PCRA H'rg, at 14-15. For that reason, he did not file a notice of alibi. *Id.* at 15. Attorney Gross also acknowledged that Ms. Marcucci retained him on behalf of Appellant and she "was contacting [him] quite a bit. . . . A lot." *Id.* at 16. He confirmed the emails and text messages between him and Ms. Marcucci, and stated Ms. Marcucci "was very intent" on not coming to trial. *See id.* at 20, 33-34. He denied that he provided counsel to her, noting that he "told her the different options" — *i.e.*, testifying that she lied to police or refusing to testify — and advised her to obtain an attorney. *Id.* at 22, 26-27. However, Attorney Gross emphasized that while Ms. Marcucci told him she wanted to "take back" her

statement to police, she "never" told him that Appellant "didn't do it." *Id.* at 19, 35.

Consistent with her affidavit, Ms. Marcucci testified that she lied in her police report and statement. N.T., PCRA H'rg, at 43-44. She claimed she sustained the injuries when she "fell down the steps" and Appellant "didn't do them." *Id.* at 46. Ms. Marcucci stated she "decided to lie" because she broke up with Appellant, but then realized she made a "huge . . . mistake" and "wanted to retract everything before it went far." *Id.* at 47. She also asserted that Attorney Gross was providing her with legal advice, and told her she "was gonna go to jail for perjury" if she testified truthfully at Appellant's trial. *Id.* at 47-48.

Ms. Ruiz-Santiago, Ms. Marcucci's sister, testified at the PCRA hearing that she was "not there when all this happened." N.T., PCRA H'rg, at 63. Rather, she claimed two police officers came to her house and told her that if she did not "go against" Appellant, they would imprison her or take her children away. *Id.* Ms. Ruiz-Santiago explained that although she did see Appellant at Ms. Marcucci's apartment on the day in question and heard an argument, she did not see him assault her sister.[9] *Id.* at 84. She also stated that Ms. Marcucci admitted that she harmed herself. *Id.* at 66-67.

_____

[9] We note this was consistent with Ms. Ruiz-Santiago's testimony at Appellant's jury trial. She stated that when she arrived as her sister's apartment, she heard Appellant and Ms. Marcucci's "screaming at each other." *See* N.T., Jury Trial, at 27, 32. However, she did not see Appellant "lay a hand on" Ms. Marcucci that day. *Id.* at 34.

At the conclusion of the hearing, the PCRA court directed both Appellant and the Commonwealth to submit memorandums addressing their arguments. *See* N.T., PCRA H'rg, at 69. Both parties complied. On December 31, 2020, the PCRA court entered an order and opinion, concluding Appellant was not entitled to PCRA relief. However, the court provided Appellant 20 days to respond before it entered a final order dismissing the petition. *See* Order, 12/31/21. Appellant did not respond, and on March 29, 2021, the PCRA court entered the order underlying this appeal. Appellant filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

Appellant raises the following two issues for our review:

1. Whether the [PCRA] court erred in dismissing [Appellant's] PCRA petition when trial counsel was ineffective for failing to request an alibi instruction when evidence of an alibi was presented at trial through testimony of a Commonwealth witness?

2. Whether a new trial should be granted based on newly discovered exculpatory evidence from the victim in the form of an affidavit stating [Appellant] did not assault her and admitting she made a false report to police regarding the alleged incident?

Appellant's Brief at 4 (unpaginated).[10]

Our standard of review of an order denying PCRA relief is well-established: "[W]e determine whether the ruling of the PCRA court is

_____

[10] Appellant numbered the first two pages of his brief with Roman numerals. Thus, we refer to the third page, which contains the Statement of Jurisdiction, as page 1.

supported by the record and is free of legal error." ***Commonwealth v. Webb***, 236 A.3d 1170, 1176 (Pa. Super. 2020).

> In PCRA appeals, our scope of review is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in the light most favorable to the prevailing party. Because most PCRA appeals involve questions of fact and law, we employ a mixed standard of review. We defer to the PCRA court's factual findings and credibility determinations supported by the record. In contrast, we review the PCRA court's legal conclusions *de novo*.

***Id.*** (citation omitted).

Where, as here, the petitioner asserts a claim of ineffective assistance of counsel, we are guided by the following:

> Counsel is presumed to have been effective. In order to overcome that presumption and prevail on a claim of ineffectiveness, Appellant must establish that: (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for his conduct; and (3) he was prejudiced by counsel's ineffectiveness, *i.e.* there is a reasonable probability that because of the act or omission in question, the outcome of the proceeding would have been different. In determining whether trial counsel's actions or omissions were reasonable, the question is not whether there were other more logical courses of action he or she could have pursued; rather, the question is whether counsel's decisions had any reasonable basis.

***Commonwealth v. Hand***, 252 A.3d 1159, 1166 (Pa. Super. 2021) (citations omitted).

Furthermore, in order to obtain relief on an after-discovered evidence claim, Appellant must prove his conviction resulted from "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become

available and would have changed the outcome of the trial if it had been introduced." ***See*** 42 Pa.C.S. § 9543(a)(2)(vi).

> [T]o prevail on an after-discovered evidence claim for relief . . . a petitioner must prove that (1) the exculpatory evidence has been discovered after trial and could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict.

***Commonwealth v. Burton***, 158 A.3d 618, 629 (Pa. 2017) (citations omitted).

In his first claim, Appellant asserts Attorney Gross was ineffective for failing to request an alibi jury instruction.[11] ***See*** Appellant's Brief at 9. Relying upon ***Commonwealth v. Bonomo***, 151 A.2d 441 (Pa. 1959), Appellant

_____

[11] Throughout his argument, Appellant also maintains Attorney Gross was ineffective for failing to file a **notice of alibi**. ***See*** Appellant's Brief at 9,11. However, that claim was not included in his Pa.R.A.P. 1925(b) statement, and is, therefore, waived for our review. ***See*** Pa.R.A.P. 1925(b)(4)(vii); ***Commonwealth v. Given***, 244 A.3d 508, 510 (Pa. Super. 2020) ("It is axiomatic that issues not included in an appellant's Rule 1925(b) Statement are waived.").

Despite Appellant's failure to preserve this claim, the PCRA court focuses on this argument in its opinion; it does not address trial counsel's failure to request an alibi jury instruction based upon Detective Kennedy's testimony. ***See*** PCRA Ct. Op., 12/31/20, at 11-13. We note, however, that even if Appellant preserved this argument, we would conclude the PCRA court properly denied relief. ***See id.*** (finding (1) trial counsel had "objective and reasonable basis" for not filing notice of alibi because (a) it would have "opened the door" for evidence of Appellant's prior *crimen falsi* conviction, and (b) Appellant's "alleged alibi was not specific and contained no details; and (2) any error was harmless in light of the "overwhelming evidence" of Appellant's guilt, including Ms. Ruiz-Santiago's testimony that "places [him] at the victim's apartment").

insists that "[a] defendant is entitled to an [alibi] instruction . . . if there is **some testimony** in the record, introduced by either the defense **or the Commonwealth**, raising the possibility of an alibi defense." *Id.* at 10 (emphases added and footnote omitted). Because Detective Kennedy testified that Appellant "indicated he was in York at the time of the assault and not in Dauphin County[,]" Appellant maintains he was entitled to an alibi instruction. *Id.* Thus, he argues Attorney Gross was ineffective for failing to request one from the trial court, and he is, therefore, entitled to a new trial. *Id.* at 11.

The only testimony resembling an alibi was from Detective Kennedy. The detective explained that he picked up Appellant at York County prison to transfer him to Dauphin County pursuant to the arrest warrant in the present case. *See* N.T., Jury Trial, at 62. He explained that during the drive, the two had a "brief conversation," which Detective Kennedy recalled as follows:

> I had to kind of explain what happened with Ms. Marcucci.
>
> And he said that he wasn't even in Harrisburg at the time. He said he was in York for the week prior to the incident, working.
>
> And I asked him where he was stayin'. And he kind of pointed over to . . . kind of an overgrown area on the side of the road with weeds and stuff, and said, "I was stayin' in an area like that."
>
> I was like, "Okay." And I said, "Well, how did you know of the incident?"
>
> He said he heard about it.
>
> "If you were staying in the weeds, how did you hear about it?"
>
> He didn't have an answer for that.

> And I asked him, "Well, how did you get down to York?"
>
> And he told me he got a ride. He wouldn't tell me who he got a ride from.
>
> And then I asked him . . . if he had a car, "Why would you get a ride . . . from Harrisburg to York? Why'd you get a ride if you had a car?"
>
> And he asked me if he was being . . . recorded. And that's where we stopped.

*Id.* at 63-64. We reiterate Appellant did not testify in his own defense, or present any witnesses to support his claim that he was in York on the night of the incident.

Upon our review, we conclude Appellant's claim lacks arguable merit. In *Bonomo*, the Pennsylvania Supreme Court held that when a **defendant** presents evidence of an alibi, the trial judge must instruct the jury that the Commonwealth retains "the burden of proving every essential element necessary for conviction[,]" and that a defendant's alibi evidence "will be considered by the jury along with all the other evidence[,]" and may be sufficient, in itself, to raise reasonable doubt. *Bonomo*, 151 A.2d at 446. Although Appellant purports to rely on *Bonomo*, his claim actually rests upon the following statement of this Court in *Commonwealth v. Van Wright*, 378 A.2d 382 (Pa. Super. 1977): "A defendant is not entitled to an [alibi] instruction under . . . *Bonomo*, . . . unless there is some testimony in the record, **introduced by either the defense or the Commonwealth**, raising the possibility of an alibi defense." *Id.* at 385 (emphasis added).

However, Appellant fails to acknowledge that this Court subsequently held this statement in **Van Wright** — that the trial court should still provide an alibi instruction when the **only** evidence of an alibi comes from the **Commonwealth** — was "merely dictum." **Commonwealth v. Fromal**, 572 A.2d 711, 722 (Pa. Super. 1990). In **Fromal**, this Court emphasized that in both **Van Wright** and **Bonomo**, "it was the defense who presented evidence of alibi." **Id.** at 721. In fact, the Court noted that "it appears that in all the relevant cases concerning the necessity of an alibi instruction, the defense has introduced evidence of alibi." **Id.** at 721 n.6.

Upon our review, we conclude the decision in **Fromal** is dispositive. In that case, the defendant was convicted of bank robbery. **Fromal**, 572 A.2d at 714. On appeal, he asserted, *inter alia*, trial counsel was ineffective for "failing to object to the trial court's failure to instruct the jury as to the defense of alibi[.]" **Id.** Upon his arrest, the defendant made statements to police in which he claimed he was gambling at a casino in New Jersey on the date of the robbery. **Id.** at 715. Similar to the case *sub judice*, the defendant "himself did not testify; this evidence was introduced through the testimony of the arresting officer[.]" **Id.** As noted **supra**, trial counsel did not request the court provide an alibi instruction to the jury, nor did counsel "affirmatively pursue an alibi defense." **Id.** at 118.

In concluding an alibi instruction was not required, the **Fromal** Court explained:

The following passage from **United States v. Booz**, 451 F.2d 719 (3rd Cir. 1972), *cert. denied*, 414 U.S. 820 . . . (1973), summarizes the rationale for the necessity of an instruction on alibi when the defense pursues it, and illustrates why such an instruction is not needed when the Commonwealth introduces alibi:

> [A] [d]efendant is entitled to a specific instruction on burden of proof on alibi issues because the jury is likely to become confused about the burden of proof when an appellant offers this type of evidence. **When affirmative proof, best known by the defendant himself is offered, a likelihood exists that jurors would look to that proof for persuasion of its truth.** But the correct approach is that such proof need only raise a reasonable doubt in the juror's mind as to whether defendant was present at the scene.

**Booz**, 451 F.2d at 723–724 (emphasis added). Clearly, when the Commonwealth offers evidence of defendant's alibi there is no danger of the jury confusing the burdens of proof because the defense has not sought to prove anything. Likewise, since [the defendant] has not attempted to persuade the jury of an alibi defense there is no risk that the jury could conclude he failed to satisfy a non-existent burden.

In sum, since the Commonwealth introduced the evidence of alibi, not the defense, the rule espoused in **Bonomo**, and the reasoning underlying its conclusions, did not warrant an alibi instruction. The **Van Wright** [C]ourt's indication to the contrary was the result of a misinterpretation of **Bonomo**'s rule, and was in no way necessary to the disposition of the case before it. Accordingly, this claim is meritless, and trial counsel, under the proceedings of this case, was not ineffective for failing to object to the absence of an alibi instruction.

**Fromal**, 572 A.2d at 722 (some citations omitted).

We agree with the reasoning in **Fromal** that an alibi instruction is **not required** when, as here, the **only** evidence of an alibi is presented *via* the defendant's pretrial, unrecorded statement to police. Indeed, our research reveals no decisions in which the courts of this Commonwealth have required

- 15 -

an alibi instruction under the facts presented herein. Thus, Appellant's first claim fails.

Next, Appellant contends the PCRA court erred in denying him a new trial based upon after-discovered exculpatory evidence, namely Ms. Marcucci's affidavit (and PCRA hearing testimony), recanting her statement to police that Appellant assaulted her. Appellant's Brief at 11. Rather than explain why he is entitled to a new trial based upon this after-discovered evidence, Appellant argues that Attorney Gross engaged in "unethical conduct and possibly a conflict of interest [by] advising [Ms. Marcucci] what to do." *Id.* at 16. Although Appellant raised this claim in his second amended PCRA petition, he did not include it in his Rule 1925(b) statement. *See* Appellant's Statement of Errors/Matters Complained of on Appeal, 5/7/21. Thus, it is waived for our review. *See* Pa.R.A.P. 1925(b)(4)(vii); *Given*, 244 A.3d at 510.

Nevertheless, we note the PCRA court did address the claim in its opinion. The court found that Appellant failed to demonstrate how he was prejudiced by counsel's actions. *See* PCRA Ct. Op. at 13-14. Indeed, the PCRA court explained:

> [Ms. Marcucci] never stated to Attorney Gross that the incident did not happen — that [Appellant] did not cause her injuries. [Ms. Marcucci], who remained in contact with [Appellant], did not want to testify because she wanted the charges to go away. Attorney Gross testified that, in his professional experience of nineteen (19) years, it is common that victims in domestic violence situations decide not to go forward with charges. Further, [Ms. Marcucci] herself stated to Attorney Gross that she did not plan on testifying and that she was ready to "resign and flee for the week of trial and just face incarceration." [She] told Attorney Gross that she

would not come to court. . . . Any action that counsel took regarding communications with the victim did nothing to change the outcome of trial. Regardless of the communications counsel had with the victim, [Ms. Marcucci] never intended to testify, and she repeatedly stated that she would not show up to court. That decision belongs solely to the victim because she wanted the charges to go away. . . .

*Id.* at 14. We note, too, that although Ms. Marcucci testified Attorney Gross was "providing [her] with legal advice," she acknowledged he advised her to "seek legal representation[,]" and she did, in fact, contact an attorney. N.T., PCRA H'rg, at 49. Accordingly, even if this claim were not waived, we would conclude no relief is warranted.

As for the issue actually preserved on appeal, Appellant failed to present any argument concerning his after-discovered evidence claim. For that reason alone, we could conclude this claim is waived. *See Commonwealth v. Freeman*, 128 A.3d 1231, 1249 (Pa. Super. 2015) ("The failure to develop an adequate argument in an appellate brief may result in waiver of the claim[.]") (citation omitted); *see also* Pa.R.A.P. 2119(a) (argument section of brief shall include "discussion and citation of authorities").

Nevertheless, we note that even if Appellant had preserved this claim, we would agree with the PCRA's ruling that no relief is warranted. Indeed, as noted *supra*, an actionable after-discovered evidence claim requires proof that, *inter alia*, the exculpatory evidence that was discovered after trial "could not have been obtained at or prior to trial through reasonable diligence[, and] would likely compel a different verdict." *Burton*, 158 A.3d at 629. When the

after-discovered evidence is recantation testimony, the Supreme Court has emphasized:

> "[T]he PCRA court must, in the first instance, assess the credibility and significance of the recantation in light of the evidence as a whole." "Unless the [PCRA] court is satisfied that the recantation is true, it should deny a new trial."

**Commonwealth v. Small**, 189 A.3d 961, 977 (Pa. 2018) (citations omitted).

Here, the PCRA court found Appellant could have obtained Ms. Marcucci's recantation before trial. The court emphasized that Ms. Marcucci first recanted her statement to police in an email addressed to Detective Kennedy in **July of 2015**, she told Attorney Gross that she had done so, and she remained in contact with Appellant both before and after his trial. **See** PCRA Ct. Op. at 15; N.T., PCRA H'rg, at 10-11, 44-45, 50; 2015 Email. In addition, the PCRA court determined Ms. Marcucci's recantation testimony was "not reliable." PCRA Ct. Op. at 17. Specifically, the court found Ms. Marcucci's explanation of how she sustained her significant injuries was "inconsistent with . . . the physical injuries" she sustained. **Id.** at 17-18. Upon our review, we agree with the PCRA court's conclusion that Appellant could have obtained Ms. Marcucci's recantation prior to trial, and defer to the court's credibility determination that her recantation testimony was simply not credible. **See Webb**, 236 A.3d at 1176. Thus, even if preserved, Appellant's claim would fail.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/16/2021