J-A28044-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| CHARLES SHIELDS | : | No. 543 EDA 2023 |

Appeal from the Order Entered January 31, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001484-2013

BEFORE:   OLSON, J., STABILE, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED JUNE 3, 2024**

The Commonwealth of Pennsylvania appeals from the grant of relief in the form of a new trial pursuant to the Post Conviction Relief Act, 42 Pa.C.S. § 9541 **et seq**. (the "PCRA"), entered by the Philadelphia Court of Common Pleas on January 31, 2023. We reverse the PCRA court's order granting a new trial and remand for the filing of a supplemental opinion and order.[1]

This Court previously summarized the underlying facts:

When Dwayne Walters awoke in the early afternoon hours of November 17, 2012, his cell phone displayed numerous missed calls from [Appellee]. Around 1:30 p.m., Mr. Walters left his apartment to get a haircut. He walked through the parking lot of his apartment complex towards his rental car, a white Dodge. As he unlocked the car door, Lamar Roane, whom Mr. Walters did not

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] We are entering a similar order in the Commonwealth's appeal in Appellee's co-defendant brother's case. **See Commonwealth v. Thomas Shields**, No. 544 EDA 2023.

know, approached Mr. Walters and asked him for a light. When Mr. Walters said he did not smoke, Roane grabbed his arm tightly. [Appellee] and his brother, Thomas Shields, appeared from their concealed locations and approached Mr. Walters and Roane. Thomas Shields displayed a long chrome-colored handgun and shoved the barrel into Mr. Walters's stomach. Thomas Shields asked Mr. Walters about the money, a reference to $700 he believed Mr. Walters owed him from a drug transaction. Surrounded, and desperate to defend himself, Mr. Walters grabbed the gun. A brief struggle ensued between Mr. Walters and Thomas Shields. [Appellee] pulled out a black handgun and Thomas told [Appellee] to shoot Mr. Walters. Mr. Walters released his hold on the gun and stopped struggling. [Appellee] took Mr. Walters' car keys, phone, watch and wallet and then forced him into the driver's door of his white Dodge. He shoved Mr. Walters over the center console into the passenger seat, while Roane and Thomas Shields went around the car and entered the rear seats of the vehicle.

Mr. Walters pushed open the passenger door, and as he started to escape, Roane grabbed his jacket. Mr. Walters wiggled out of his grasp and ran while Roane pursued him. When Mr. Walters glanced back to see if anyone was chasing him, he saw [Appellee] and Thomas Shields aiming guns at him. He heard two gunshots and a single bullet struck him in the back and exited his chest.

Jennifer Boyle, a resident of the apartment complex, heard men arguing outside. When she went to the window of her apartment, she saw two men fire their guns. She later identified the shooters as [Appellee] and Thomas Shields.[2]

Mr. Walters, bleeding profusely from his gunshot wound, entered the back seat of a stopped vehicle occupied by two women and a young boy. He pressed his back against the seat of the vehicle in an attempt to stop the bleeding. The woman in the passenger seat panicked and asked Mr. Walters to exit her car, and he stumbled out and collapsed onto the sidewalk. As he lay there, he saw his assailants exiting the parking lot in his white Dodge rental car.

---

[2] Although this Court stated that Ms. Boyle identified Appellee and his brother as the shooters, there is no testimony to that effect in the trial record. However, her testimony was consistent with a conclusion that it was the co-defendants who were shooting at Mr. Walters.

At approximately 1:39 p.m., Philadelphia Police Officer Brandon Badey received a priority radio call reporting a shooting near 2607 Welsh Road, Philadelphia, Pennsylvania. Upon arriving at the scene, Officer Badey saw Mr. Walters on the ground, holding a blood-soaked towel to his chest. Mr. Walters, who was slipping in and out of consciousness, was unable to communicate to Officer Badey who shot him. Realizing that Mr. Walters' condition was critical, Officer Badey and the second officer on scene placed Mr. Walters in the back of Officer Badey's patrol car and rushed him to the hospital. Mr. Walters was immediately taken to the operating room and, after surgery, he was transferred to the Intensive Care Unit. He remained hospitalized for six weeks.

During the investigation of the crime scene, police located two .45 caliber casings, which the Commonwealth's ballistician testified were fired from the same gun. Underneath a nearby car that had a bullet hole in its windshield, investigators found a cell phone that contained several videos and photos that Thomas Shields had taken of himself. Investigators obtained search warrants for that cell phone data, including call logs and text messages. It also obtained warrants for the data from Mr. Walters' cell phone and information associated with the telephone numbers of [Appellee], Thomas Shields, and Lamar Roane. The search revealed that multiple telephone calls were made to and from Thomas Shields and [Appellee], and from Thomas Shields to Lamar Roane, on the day in question. At least four telephone calls and several text messages were sent from Thomas Shields' phone to the victim on the morning of the shooting.

On November 20, 2012, Mr. Walters identified both [Appellee] and Thomas Shields from a photographic array. Several days later, Officers arrested Thomas Shields at 1758 East Washington Lane, Philadelphia, Pennsylvania. A search of the residence yielded one silver .45 caliber hollow point bullet. The Commonwealth's ballistics expert could not determine if the spent .45 caliber casings found at the scene were hollow point bullets. On November 29, 2012, [Appellee] surrendered at the U.S. Marshal's office.

At trial, Mr. Walters testified that he had previously sold drugs for [Appellee] and his brother. Mr. Walters reported that he received numerous threatening phone calls and text messages from [Appellee] and Thomas Shields about a $700 debt he allegedly owed Thomas following a recent drug transaction. Thomas Shields gave him an ultimatum: "either come up with money or there will

be consequences[,]" which he understood to mean "physical harm." N.T., 5/7/14, at 56.

Mr. Walters told the jury that, prior to trial, a mutual friend of [Appellee] and Mr. Walters offered him $5,000.00 not to testify in court, but he did not accept. On May 16, 2014, a jury found [Appellee] guilty of aggravated assault, conspiracy to commit aggravated assault, and attempted kidnapping. He was acquitted of attempted murder, firearms not to be carried without a license, and possession of an instrument of crime.

*Commonwealth v. Charles Shields*, 3376 EDA 2014, 2016 WL 5210901, *1-*2 (Pa. Super., filed July 22, 2016), *appeal denied*, 160 A.3d 793 (Pa. 2016).

In addition, the Commonwealth presented at trial cell phone tower data that demonstrated that someone in possession of Appellee's T-Mobile cell phone was within the service area of the southeast sector of a cell phone tower at 2555 Welsh Road for about an hour and a half immediately before the kidnapping attempt and shooting. N.T. 5/12/14, 9. The crime scene is close to the base of that tower. *Id*. Inferring that it was Appellee in possession of his phone, this pattern would be consistent with him staking out the victim's apartment. Starting at 1:40 p.m., immediately after the shooting, Appellee's cell phone was on the move away from the crime scene. *Id*., 9. It first connected to a cell tower northwest of the crime scene, then on a cell tower near the entrance to the Pennsylvania Turnpike, and at 2:21 p.m. it was on a cell tower on Bethlehem Pike more than 12 miles west of the crime scene and northwest of the city, which distance, timing and location would be consistent with Appellee having been near the crime scene in the northeast section of

the city, then on the turnpike heading to his residence in Germantown in the northwest section of the city. *Id*., 10-12. The phone connected and remained connected to a cell tower near his residence at 2:53 p.m. *Id*., 12.

The Sprint cell phone associated with Lamar Roane connected to a cell tower approximately a half mile from the apartment complex at 1:19 p.m. *Id*., 14. At 1:40 p.m., it was connected to a tower about a mile northwest, and on another tower 5.6 miles northeast of that about 15 minutes later. *Id*. 14-15. At 2:12 p.m. the phone connected to the same cell tower on Bethlehem Pike that Appellee's phone had connected to at 2:21 p.m. *Id*., 10, 15. Roane's phone ultimately connected to the cell tower near his residence on Washington Lane in Germantown in the northwest section of the city by 2:21 p.m. and stayed connected to that tower through 2:56 p.m. *Id.*, 15-16. The evidence at trial thus showed Appellee and Roane followed a similar path leaving the crime scene at approximately the same time immediately after the shooting. *Id*., 16. Appellee's brother's cell phone was found at the scene. N.T. 5/8/14, 86, 100. The straightforward inference from the cell phone location evidence is that Appellee, his brother and Lamar Roane, residents in Germantown, had travelled across the city to the Apartment complex, with Appellee leaving first to watch the victim's apartment for a time and the other two joining him

shortly before the attempted kidnapping and shooting. The trio then fled immediately, in near unison, after the shooting to return to Germantown.[3]

The jury found Appellee guilty of aggravated assault with serious bodily injury, conspiracy to commit aggravated assault and attempted kidnapping. It acquitted him of attempted murder, carrying a firearm without a license and possessing an instrument of crime. The trial court imposed an aggregate term of 21 to 42 years' imprisonment. This Court affirmed the judgment of sentence on July 22, 2016. The Supreme Court of Pennsylvania denied a petition for allowance of appeal on November 8, 2016.

On November 6, 2017, Appellee filed a timely *pro se* PCRA petition. Counsel was appointed and amended the petition. In the amendment and subsequent filings, Appellee alleged, *inter alia*, that trial counsel provided multiple instances of ineffective assistance by not objecting to portions of the prosecutor's summation and not objecting to the court's instruction on an "overt act" as an element of criminal conspiracy, and that appellate counsel, who was trial counsel, was ineffective for not raising as error the trial court's admission of Pa.R.E. 404(b) evidence. The Commonwealth filed a motion to

_____

[3] On the day of the shooting, cell phone records established that someone using Appellee's cell phone called or messaged his brother's cell phone, the one ultimately left at the scene, 16 times that day, ending at 1:19 p.m. N.T. 5/9/14, 21-24. Someone using Appellee's brother's phone called or messaged Appellee's phone 15 times, ending at 12:07 p.m. *Id.*, 25. There also were five calls or messages between Appellee's and Lamar Roane's cell phones starting at 12:23 p.m. and ending at 1:40 p.m., as well as four calls from Appellee's phone to the victim's phone in the morning. *Id.*, 26-30. This pattern of calls supports the inference that the three conspirators converged on the scene of the shooting.

dismiss the petition. On September 19, 2019, the trial judge, sitting as the PCRA court, summarily granted the petition without holding an evidentiary hearing. The Commonwealth timely sought reconsideration alleging PCRA court error in not holding a hearing or specifying the claim or claims on which it granted relief. Before the PCRA court ruled on the reconsideration, the Commonwealth appealed.

On December 24, 2020, this Court remanded while retaining jurisdiction, because it was unable "to determine which of [Appellee's] ineffectiveness claims the PCRA court [had] found to be meritorious." *Commonwealth v. Shields*, 2991 EDA 2019, 2020 WL 7663483, **2 (Pa. Super., filed Dec. 24, 2020). "[T]he PCRA court did not indicate in its September 19, 2019 order the basis on which it granted [Appellee's] petition for PCRA relief. Nor did the PCRA court provide in its Pa.R.A.P. 1925(a) opinion the reasons for the rulings and errors complained of by the Commonwealth in its concise statement." *Id*. This Court ordered the PCRA court to issue a revised opinion addressing the issues raised by the Commonwealth. *Id*.

The PCRA court complied by revising its opinion "to indicate that PCRA relief was granted on multiple bases, including on claims made by [Appellee] that trial counsel and direct appeal counsel were ineffective." *Commonwealth v. Shields*, 2991 EDA 2019, 2021 WL 3056291, **1 (Pa. Super., filed July 20, 2021) (the "*Remand Order*"). Further, the PCRA court stated both that "if direct appeal counsel and trial counsel had objected at the proper times, this court believes that a curative instruction would have been

- 7 -

offered" and that "these failures of counsel to object could not reasonably have been designed to further [Appellee's] interests." *Id.*

This Court remanded again, stating:

[B]ecause the PCRA court did not conduct an evidentiary hearing to permit trial counsel and direct appeal counsel to explain the bases for their legal strategies, we cannot determine whether trial counsel had a reasonable basis for not objecting to comments made by the prosecutor during closing argument or to the trial court's jury instructions, or whether direct appeal counsel had a reasonable basis for not challenging the trial court's admission of prior bad acts evidence. Without this critical evidence, it was improper for the PCRA court to summarily conclude that trial counsel and direct appeal counsel did not have a reasonable basis for their actions. Additionally, the PCRA court did not address whether there was a reasonable probability that the outcome of the proceedings would have been different had trial counsel made the specified objections and direct appeal counsel had challenged the admission of prior bad acts evidence.

*Id*. Thus, on July 20, 2021, this Court vacated the order granting PCRA relief and remanded for the PCRA court to conduct an evidentiary hearing. *Id*. at **1-2.

The ordered hearing was held before the PCRA court on September 15, 2022. There is no order in the record limiting the claims to be addressed at the hearing. Trial counsel for Appellee and Appellee's brother testified. Appellee's counsel testified to: the reasons he did not object to the closing portion of the prosecutor's summation, N.T. 9/15/22, 10-19; his overall trial strategy, *id*., 20-21; his reason for objecting to and requesting a curative instruction for the prosecutor saying he tried to "mislead" the jury, *id*., 23-24; his reason for not objecting to an instruction that inured to Appellee's

benefit, *id*., 25-29; and reasons for not raising the Rule 404(b) issue on appeal, *id*., 30-31.[4]

At the conclusion of the testimony, PCRA counsel explicitly withdrew the ineffective assistance claim against direct appeal counsel for not raising the Rule 404(b) issue. N.T. 9/15/22, 67. PCRA counsel forwarded argument on the allegations of ineffective assistance based on the failure of trial counsel to object to the final portion of the prosecutor's summation, including on both the lack of a reasonable basis and the presence of prejudice based on inconsistent verdicts. *Id*., 67-73. Counsel also argued both a lack of reasonable basis and prejudice for the allegation of ineffectiveness for failing to object to the court's instruction on the overt act element. *Id*., 73-77.[5]

---

[4] Appellee's brother's trial counsel also testified to his reasons for: not seeking to suppress the information found on the cell phone found by police at the scene, N.T. 9/15/22, 45-49, 57-60; not objecting to the closing portion of the prosecutor's summation, *id*., 49-50, 61-62; and not objecting to an instruction that inured to his client's benefit, *id*., 51-52.

[5] PCRA counsel for Appellee's brother primarily argued the ineffective assistance of trial counsel for not moving to suppress the cell phone found on the scene on the ground that the Commonwealth's evidence showed there had been a struggle with the victim during which the cell phone was dropped, which, he argued, distinguished voluntarily abandonment of the phone. N.T. 9/15/22, 80-84. With respect to trial counsel's failure to object to the prosecutor's summation in which she asked the jury to put themselves at the scene, counsel argued there was no reasonable basis and prejudice because of the risk the jury might reach a verdict based on passion and not evidence. *Id*,. 85-86. PCRA counsel also argued that the instruction on overt act was confusing and not objecting was prejudicial because it could have led to the jury using the wrong standard. *Id*., 86-88.

With respect to the prosecutor's summation, the Commonwealth argued that, in context, the argument addressed the character attacks on the victim and stressed that even though not a perfect person, he still had a right to not be shot and robbed by the co-defendants who put others at risk with their actions. The Commonwealth also argued that the defendants' trial strategy was to avoid conviction for attempted murder, which goal was achieved, and emphasized that it was a reasonable strategy. Moreover, there was no prejudice as an objection would have, at most, obtained a curative instruction that likely would have tracked the court's general instruction to base the verdict on the evidence. *Id*. 95-105. That instruction was given. The Commonwealth also noted that the physical evidence corroborated the victim's testimony. *Id*., 106-111. The Commonwealth also argued reasons to reject the ineffectiveness claims with respect to suppression and the court's instruction. *Id*., 90-94, 112-114. The PCRA court held its decision under advisement. *Id*., 133.

On January 31, 2023, the PCRA court entered an order and memorandum opinion on the docket. *See* Trial Court Docket Entries 284 & 285; Trial Court Record, 554. The order recited the petition, subsequent filings, Commonwealth responses, and independent review of the record and argument of counsel at an evidentiary hearing, and "ordered and decreed that the Petitioner's Petition is granted and the defendant is awarded a new trial." *See* Trial Court Record, 554. The PCRA court contemporaneously filed an opinion which explained that the grant of the petition and award of a new trial

was on the ground that trial counsel was ineffective for not objecting to "claims" made in the prosecutor's summation. PCRA Court Opinion, 7. Specifically, the PCRA court ruled that there was arguable merit that trial counsel should have objected to claims "such as" (1) trial counsel "was 'purposefully trying to mislead you [the jury]'" or (2) "it's about people like you… [the jury], [w]ho live in apartment complexes like the people at the Joshua Street Houses." *Id*. at 7-8. (brackets in PCRA court opinion). *See* N.T. 5/15/14, 13, 24.

The PCRA court then found that trial counsel did not articulate a reasonable basis for electing not to object to the final portion of the prosecutor's summation. It rejected "trial counsel's argument that not objecting to outlandish statements made during closing arguments is sometimes the best strategy." PCRA Court Opinion, 8.

Addressing the prejudice prong, the PCRA court wrote:

Finally, this court finds that there is, in fact, a reasonable probability that the outcome of the proceedings would have been different had trial counsel objected to [the prosecutor's] closing statement. This court finds that statements made in the ADA's closing such as, "Bullets don't have names on them ... Bullets don't care who you are or what you do. Bullets don't care if you're Dwayne Walters or if you're a kid riding a bike. That's why this case isn't about Dwayne. It's about this." [N.T. 9/15/22, 12.] Furthermore, other remarks made in the closing mentioned above could have reasonably, unfairly prejudiced the jury against Appellant as counsel did not object to them during trial.

PCRA Court Opinion, 8. Accordingly, the court granted Appellee's "PCRA [petition] and order[ed] that a new trial be held in the matter." *Id*.

The Commonwealth filed a timely appeal. Notably, the PCRA court neither ordered a Rule 1925(b) Statement, nor filed a revised opinion.

The Questions Presented in the Commonwealth's brief are:

1. Did the PCRA court err by granting post-conviction relief and awarding defendant a new trial based on the claim that trial counsel was ineffective for supposedly not objecting to the remark the prosecutor made during closing argument that appropriately highlighted the impropriety of one of defense counsel's own closing remarks, where counsel did object, and where that objection was sustained by the trial court? …

2. Did the PCRA court err by granting post-conviction relief and awarding defendant a new trial based on the claim that trial counsel was ineffective for not objecting to a remark the prosecutor made during closing argument that, while properly reminding the jury that the victim's character was not on trial, briefly referred to the wider community, where the passing comment did not prevent the jurors from weighing the evidence objectively and rendering a true verdict?

Commonwealth's Brief, 4.

When reviewing the grant of PCRA relief, "we determine whether the PCRA court's determinations are supported by the evidence of record and are free of legal error." **Commonwealth v. Brown**, 196 A.3d 130, 150 (Pa. 2018). We will not disturb the PCRA court's factual findings unless the certified record does not support them. **Id**. We review its legal conclusions *de novo*. **Id**.; **Commonwealth v. Spotz**, 18 A.3d 244, 259 (Pa. 2011).

> With respect to claims of ineffective assistance of counsel, counsel is presumed to be effective, and the petitioner bears the burden of proving to the contrary. [**Commonwealth v. Hanible**, 30 A.3d 426, 439 (Pa. 2011)]. To prevail, the petitioner must plead and prove, by a preponderance of the evidence, the following three elements: (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction;

- 12 -

and (3) the petitioner suffered prejudice as a result of counsel's action or inaction. *Id.* With regard to the second prong (reasonable basis), "we do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis." [*Id.*] We will hold that counsel's strategy lacked a reasonable basis only if the petitioner proves that a foregone alternative "offered a potential for success substantially greater than the course actually pursued." *Spotz*, 18 A.3d at 260. Our review of counsel's performance "must be highly deferential." *Commonwealth v. Tharp*, … 101 A.3d 736, 772 (Pa. 2014) (quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984)). To establish the third element (prejudice), the petitioner must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction. [*Hanible*, 30 A.3d at 439]*.*

*Brown*, 196 A.3d at 150–51 (internal citations edited for clarity). A failure to satisfy any of the three prongs is fatal to the claim of counsel's ineffectiveness. *Id.* at 151; *Commonwealth v. Midgley*, 289 A.3d 1111, 1119 (Pa. Super. 2023).

The Commonwealth first argues that the PCRA court ruled trial counsel was ineffective for not objecting to the prosecutor's statement to the jury "I don't know why [Appellee's trial counsel is] purposefully trying to mislead you." Appellant's Brief, 14; N.T. 5/15/14, 13. We do not read the PCRA court's opinion to have granted relief on that claim, but to the extent it did, we agree it would be erroneous.[6]

---

[6] The PCRA court opinion is not a model of clarity, which we will discuss further with respect to remand. We find it particularly problematic that the PCRA court has not made its rulings clear in light of the prior remands in this PCRA proceeding.

During the prosecutor's summation, she stated:

Now, the shooting happens right before 1:38pm. Now, how do we know that? Because there's a 911 call, the 911 print out, that we all agreed to or stipulated to. Showing the first 911 call at 1:37:52pm. So the shooting happened, what, a minutes or two before. I don't know why [trial counsel] -- I don't know why he's purposefully trying to mislead you.

[Trial Counsel]: Objection.

[Prosecutor]: I would hope not, but the defendants, the evidence, that they agreed to put the shooting at before 1:38, and 2 to 3 minutes after that shooting, Charles Shields, and at least Lamar Roane because we have his phone and are driving away.

N.T. 5/15/14, 13.

Trial counsel in fact objected. N.T. 5/15/14, 13. Therefore, he could not be found ineffective for not objecting to the prosecutor's summation. **See Commonwealth v. Paddy**, 800 A.2d 294, 316 (Pa. 2002). Not only did trial counsel object, but the trial court sustained the objection at the conclusion of the prosecutor's summation. N.T. 5/15/14, 24. Counsel then asked for a mistrial. **Id**., 25. The trial court, which also was the PCRA court, and which had heard the final portion of the prosecutor's summation immediately prior to the sidebar, then denied both a mistrial and a cautionary instruction. **Id**., 26. "Since the very issue Appellant claims not to have been raised, in fact, was raised and adequately disposed of, his argument of ineffectiveness has no merit." **Commonwealth v. Silo**, 502 A.2d 173, 176–77 (Pa. 1985).[7]

_____

[7] For the purposes of completeness, the objected to "claim" by the prosecutor was referring to the defense argument that the cell tower data showed that
*(Footnote Continued Next Page)*

- 14 -

The Commonwealth's second claim argues that the PCRA court erroneously granted relief on an allegation of trial counsel's ineffective assistance for declining to object to the prosecutor's summation, which allegation was based on the following passage:

> I know I've talked for a long time. And I just have one more thing to say. Dwayne Walters may not be a great guy. He's an admitted drug dealer. He's an admitted non-violent drug dealer. Dwayne Walters isn't my friend, he's not coming over to my house for Sunday dinner. We're not watching the Phillies together. But I want you to understand something very important. This case isn't about Dwayne. It's about you. It's about each and every one of you. **It's about people like you who live in apartment complexes like the people at the Joshua Street Houses**. It's about people like you who want to raise their kids and families in safe environments, safe from people like the defendants who shoot guns in the middle of the parking lot. It's about this. And it's about this. **Bullets don't have names on them**. They don't have zip codes. There's no GPS tracker. **Bullets don't care who you are or what you do. Bullets don't care if you're Dwayne Walters or if you're a kid riding a bike. That's why this case isn't about Dwayne. It's about this**. No one has the right to shoot anybody. Period. End of story.
>
> This was a bold and brazen shooting in broad daylight and the evidence is convincing and it's compelling. And it could not be more clear that these defendants are guilty.

---

Appellee had left the scene before the shooting, but the record was clear that the shooting had to occur before the first 911 call reporting it, which information was broadcast over police radio and received at 1:39 p.m., and Appellee's cell phone was connected to the cell tower near the victim's apartment from 11:53 a.m. until 1:20 p.m. and only connected to a different cell tower, a half mile northwest, after the shooting, at 1:40 p.m. N.T. 5/6/14, 27; N.T. 5/12/14, 9. While the objection to the prosecutor's disparagement of counsel was properly sustained, the purpose of the argument was both proper rebuttal of a defense claim and evidence based.

N.T. 5/15/14, 23-24 (emphasis supplied based on the PCRA court's emphasis in its analysis).[8]

The PCRA court ruled there was arguable merit to the underlying claim that counsel should have objected to the prosecutor's assertions "such as" the case being "about people like you who live in apartment complexes like the people at the Joshua Street Houses." PCRA Court Opinion, 7. Although we do not find that statement particularly worrisome as it was merely a rhetorical device to impart on the jury the seriousness of a shooting in a public area, even one over a drug debt, we agree there is a problematic assertion in this passage. The prosecutor's reference to "a kid riding a bike" in the path of a bullet was a fact not in evidence. There was evidence that it was a sunny, unusually warm weekend afternoon in a residential area, and Dwayne Walters testified there was a child in a car in which he sought refuge. N.T 5/7/14, 49, 68-69; N.T. 5/8/14, 88. We do not have to decide whether the prosecutor's assertion might have been a fair inference. *See Commonwealth v. Luster*, 71 A.3d 1029, 1048 (Pa. Super. 2013) (*en banc*) ("a prosecutor is permitted to 'vigorously argue his case so long as his comments are supported by the evidence or constitute legitimate inferences arising from that evidence'"). It is enough for this purpose to find that it was not clearly so. Therefore, we

---

[8] We infer from context that where the prosecutor states, "It's about this. And it's about this," she was referring individually to the two fired cartridge casings found at the scene and admitted into the record. *See* N.T. 5/8/14, 94-95.

agree with the PCRA court that an objection would have had at least arguable merit satisfying the first element of the ineffectiveness test.

With respect to the second element, this Court remanded the matter in 2021 for the PCRA court to hold an evidentiary hearing in part to create a record of trial counsel's "legal strategies." **Remand Order**, \*\*1. Trial counsel explained that he believed both that the prosecutor's summation had gone beyond the bounds of propriety and that an objection was not necessary because the judge's instructions to the jury to base its decision on the evidence and not the arguments of counsel would suffice. N.T. 9/15/22, 12-14. He also explained that he believed it is sometimes best not to object. In this instance, he believed the prosecutor had been "abrasive and argumentative" during trial such that she had lost the jury, and so he did not want to object and possibly engage in argument in front of the jury that might lose that advantage. **Id**., 14-17. The PCRA court found that counsel had not articulated a reasonable strategic reason "designed to effectuate his client's interest" for not objecting to the final portion of the prosecutor's summation. PCRA Court Opinion, 8. This ruling is, in part, based on the PCRA court's credibility determination to "reject[…] trial counsel's argument that not objecting to outlandish statements made during closing arguments is sometimes the best strategy." PCRA Court Opinion, 8. "We must defer to the PCRA court's findings of fact and credibility determinations, which are supported by the record," as they are here. **Commonwealth v. Spotz**, 84

A.3d 294, 319 (Pa. 2014); ***Commonwealth v. Harper***, 230 A.3d 1231, 1236 (Pa. Super. 2020).

We also remanded this matter for the PCRA court to "address whether there was a reasonable probability that the outcome of the proceedings would have been different had trial counsel made the specified objections." ***Remand Order***, **1. The PCRA court addressed the prejudice prong as follows:

> [T]his court finds that there is, in fact, a reasonable probability that the outcome of the proceedings would have been different had trial counsel objected to [the prosecutor's] closing statement. This court finds that statements made in the ADA's closing such as, "Bullets don't have names on them … Bullets don't care who you are or what you do. Bullets don't care if you're Dwayne Walters or if you're a kid riding a bike. That's why this case isn't about Dwayne. It's about this." ***Id***. p. 12. Furthermore, other remarks made in the closing mentioned above could have reasonably, unfairly prejudiced the jury against Appellant as counsel did not object to them during trial.

PCRA Court Opinion, 8.

The PCRA court's discussion is unpersuasive. It merely repeats the legal standard from our 2021 decision and, without reference to the evidence at trial or possible relief, asserted a tautology that Appellee was prejudiced because counsel did not object.

Accordingly, we conduct our own review of the record and hold that prejudice was not proven.

> [T]he prosecutor must be allowed to respond to defense counsel's arguments, and any challenged statement must be viewed not in isolation, but in the context in which it was offered. The prosecutor must be free to present his or her arguments with logical force and vigor." Within reasonable bounds, the prosecutor may employ

oratorical flair and impassioned argument when commenting on the evidence....

***Commonwealth v. Bryant****,* 67 A.3d 716, 728 (Pa. 2013) (citations omitted);

***Commonwealth v. Riggle***, 119 A.3d 1058, 1068 (Pa. Super. 2015).

The final portion of the Commonwealth's summation was, in context, an aggressive argument by the prosecutor to rebut the attacks on the victim, an admitted drug dealer, while providing the jury with a reason for why they had spent a week in trial over an alleged drug debt that turned violent. An argument focusing on the danger of fired bullets to bystanders is a legitimate concern for the jury whenever the evidence at trial demonstrates that gunfire was initiated in an open and populated public area. If the argument strayed over a line that the trial court would have enforced had there been an objection, it still was not *per se* reversible as it was firmly based in the evidence at trial – other than the reference to a child on a bike – and was about the nature of the crime committed. ***See Commonwealth v. Hall***, 701 A.2d 190, 202 (Pa. 1997) ("[C]omments by a prosecutor do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds a fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict"); ***Commonwealth v. Patton***, 936 A.2d 1170, 1174-75 (Pa. Super. 2007) (discussing the lack of reversible prejudice for "send a message" arguments generally where arguing for a finding of guilt based on trial evidence), ***aff'd***, 985 A.2d 1283 (Pa. 2009). The Pennsylvania Supreme Court

has stated in this context that it does "not favor *per se* rules in error review."
***Patton***, 985 A.2d at 1288 n.3.

Thus, the question of prejudice turns not on an assumption the argument *per se* denied Appellee a fair trial, but whether an objection would have had a reasonable likelihood to alter the result at trial. ***Commonwealth v. Daniels***, 963 A.2d 409, 427 (Pa. 2009) ("In order to establish prejudice, appellees must demonstrate that there is a reasonable probability that the outcome of the proceedings would have been different had counsel pursued the theory they now present"). The evidence against Appellee was strong, albeit not so overwhelming that the jury convicted him on all charges. The victim identified Appellee and his brother whom he knew from the drug trade, explained the nature of the drug debt and Appellee's prior attempts to obtain payment. N.T. 5/7/14, 46, 52-56, 80. There were numerous calls by Appellee to Walters the morning of the shooting. N.T. 5/9/14, 28-30. Walters also described the ambush attack, attempted kidnapping, his initial escape and the shooting, much of which was corroborated by a neighbor who saw the confrontation and shooting and the physical items found at the scene. N.T. 5/6/14, 30; N.T. 5/7/14, 9, 15, 47-52, 56-79; N.T. 5/8/14, 17-32, 85-87. In addition, the cell phone location evidence demonstrated that Appellee, who lived on the opposite side of the city, had been in the immediate area of Walters' apartment for an hour and a half immediately prior to the shooting, with his brother and Roane coming into the area shortly before the shooting, having been in near constant contact with Appellee, and then all three fleeing

in similar timing and directions after the shooting, with Appellee's brother's cell phone left at the scene. N.T. 5/8/14, 100; N.T. 5/9/14, 19-30; N.T. 5/12/14, 3-16. Accordingly, there was ample evidence on which the jury could base a finding of guilt. We are not persuaded by Appellee's argument that an inconsistent verdict – Appellee was acquitted of attempted murder and firearms possession – necessarily demonstrates it "was more of a compromise than one based on the actual evidence." Appellee's Brief, 16.[9]

Assuming the trial court would have sustained an objection if it had been raised, it then could have chosen among three responses. It could have given no additional relief – as it did with the objection raised and argued by trial counsel – a cautionary instruction or a mistrial. We do not believe that a cautionary instruction would have changed the jury's verdict, and note that Appellee does not present any argument that it could have. Appellee's Brief, 17.

Obviously, the grant of a mistrial would alter the result of trial. However, as discussed above, the argument itself did not warrant it absent a clear effect on the jury. We note that the trial court had the opportunity to grant a mistrial immediately after the portion of the summation at issue and declined to do so. N.T. 5/15/14, 26. The court was in "the best position to assess the effect" of the summation on the jury. ***Commonwealth v. Rega***, 933 A.2d 997, 1016 (Pa. 2007); ***Commonwealth v. Simpson****, 754 A.2d 1264, 1272 (Pa. 2000).

---

[9] If the jury found Appellee was not armed during the incident but otherwise fully participated in the assault, the verdict is not at all inconsistent.

We do not find it to be reasonably probable that an additional objection by trial counsel would have obtained a mistrial where one had already been denied. Therefore, Appellee failed to prove actual prejudice. "Accordingly, we reverse the PCRA court's grant of a new trial on this basis." **Daniels**, 936 A.2d at 429.

Appellee also argues that the PCRA court granted a new trial on the basis of his allegation that trial counsel was ineffective for not objecting to the court's instructions on criminal attempt and criminal conspiracy in that they did not clearly distinguish a substantial step from an overt act. **See** Appellee's Brief, 18-20. It is clear to us that the PCRA court did not grant relief on this claim of ineffective assistance, as it is not mentioned in the PCRA Court Opinion. We note further that neither the Commonwealth nor Appellee's brother believed the PCRA court had granted relief on this claim as neither discuss it. Moreover, the claim was explicitly mentioned in this Court's 2017 decision ordering the PCRA court to issue a new decision explaining which claims it had granted relief on and the reason for doing so. Therefore, we doubt that the PCRA court would have declined to explicitly grant relief if it had intended to do so after the hearing.

We are aware, however, that the written order of the PCRA court grants the petition (and all subsequent amendments) in total, rather than in part. **See** Trial Court Record, 554. We also recognize that whether a reasonable basis or actual prejudice was proven at the hearing may play out differently with a jury instruction claim. Out of fairness to all of the parties, we therefore

remand the matter for the PCRA court to write a supplemental opinion stating clearly its ruling on this claim, and its reasons therefor, including a determination of whether the instructions were confusing, whether counsel had a reasonable basis to not object, and whether, in light of the strong evidence supporting the verdict, there was actual prejudice from counsel's alleged failure. We will relinquish jurisdiction so that the parties can, within 30 days of the entry of the supplemental opinion and order, appeal the ruling if they so choose.

To aid the PCRA court to expeditiously file its supplementary opinion, we address the two other claims raised by Appellee and Appellee's brother at the PCRA hearing. Appellee argues that the trial court also granted relief on his allegation that direct appeal counsel was ineffective for not challenging the admission of Rule 404(b) evidence at trial. Again, the PCRA court did not grant relief on that claim. Further, it may not do so now, as that allegation of ineffective assistance was explicitly withdrawn at the conclusion of the evidentiary hearing. N.T. 9/15/22, 68.

With respect to co-defendant's allegation that his trial counsel was ineffective for not seeking to suppress the cell phone that he left at the scene, argued at the PCRA hearing, there are two legal bases on which that claim fails. First, subsequent to the time of trial in May 2014, the United States and Pennsylvania Supreme Courts authored decisions altering the legal requirements for suppression of data obtained from cell phones. *See Riley v. California*, 573 U.S. 373, 403 (2014) (requiring search warrant for

information on cell phone seized incident to an arrest); ***Commonwealth v. Fulton***, 179 A.3d 475, 486-489 (Pa. 2018) (extending search warrant requirement). Counsel cannot be found ineffective for failing to predict a future change in the law. ***Commonwealth v. Brown***, 196 A.3d 130, 178 (Pa. 2018). Second, the argument forwarded by Appellee's brother was that the cell phone had been forcibly abandoned by him during a struggle with Walters. N.T. 9/15/22, 80-82. The question of coerced abandonment arises where police conduct causes the possessor of property to abandon control over it. ***See Commonwealth v. Jackson***, 698 A.2d 571, 576 (Pa. 1997) ("when the causative factor in the abandonment of the evidence is an unconstitutional search and seizure, the contraband must be suppressed"). In contrast, here, Appellee's brother lost possession of the cell phone while engaging (voluntarily) with Walters before any police officer arrived at the scene.

Based upon the foregoing, the order of the PCRA court is reversed and the matter remanded to the PCRA court. Upon remittal of the record pursuant to Pa.R.A.P. 2591, the PCRA court shall file a supplementary order and opinion addressing the one remaining allegation of ineffective assistance.

Order reversed. Case remanded for entry of a supplementary opinion and order. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary


Date: 6/3/2024